In re the CUSTODY OF G.J.

Charles Jenkins, Appellant–Petitioner,

v.

Pamela (Jenkins) Godbey, Appellee–Respondent.

No. 79A02–0305–CV–450.

Court of Appeals of Indiana.

Sept. 30, 2003.

---

R. Perry Shipman, Fowler, IN, Attorney for Appellant.

Randall L. Vonderheide, Vonderheide & Knecht, P.C., Lafayette, IN, Attorney for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Charles Jenkins appeals the trial court's dismissal of his petition seeking to obtain custody of G.J., his niece and the daughter of Pamela Godbey. We reverse and remand.

### Issue

The sole restated issue before us is whether Jenkins had standing to seek custody of G.J. by filing a petition under Indiana Code Section 31–17–2–3(2).

### Facts

Godbey was married to Jenkins' brother, Warren Jenkins, and the couple had G.J. in 1999. Godbey and Warren later filed for divorce; before the dissolution proceedings were final, however, Warren died. It would appear that within a matter of weeks of Warren's death, Godbey married Paul Godbey and brought G.J. into that marriage.[1] Jenkins then filed a "Petition for Custody" of G.J., which alleged that Paul Godbey was a convicted child molester who also collected child pornography, that a court order in the dissolution action between Godbey and Warren had prohibited Godbey from allowing G.J. to have any

---

1. Jenkins' petition was filed on April 25, 2002. It alleged that Warren died on February 4, 2002, and that Godbey had already remarried.

contact with Paul Godbey, and that Godbey had in the past lost custody of other children to the Tippecanoe County Office of Family and Children. App. p. 1. The petition also asserted that Jenkins was entitled to file the petition for custody pursuant to Indiana Code Section 31–17–2–3(2).[2]

On the morning that a final hearing was set to take place on Jenkins' petition, Godbey moved to dismiss "for the reason that Charles Jenkins has no standing to pursue custody in this cause." App. p. 4. The trial court granted the motion, concluding that Indiana Code Section 31–17–2–3 was "relative only to dissolutions of marriage. And I believe that he would properly file under the guardianship statute." Tr. p. 8. Jenkins now appeals.

## Analysis

Godbey claims that Jenkins did not have standing to seek custody of G.J. by proceeding under the child custody statutes contained in Indiana Code Chapter 31–17–2, but instead "it would appear that a guardianship petition is Charles' remedy." Appellee's Br. p. 2. "The main purpose of standing is to insure that the party before the court has a substantive right to enforce the claim that is being made in the litigation." *Schulz v. State*, 731 N.E.2d 1041, 1044 (Ind.Ct.App.2000), *trans. denied.* Courts are denied any jurisdiction over a particular case unless a party with standing is participating in the case. *See Pence v. State*, 652 N.E.2d 486, 488 (Ind.1995). "An allegation that a party lacks standing is treated as a motion to dismiss under Rule 12(B)(6) of the Indiana

Rules of Trial Procedure." *Rayle v. Bolin*, 782 N.E.2d 1063, 1064 (Ind.Ct.App.2003). "A motion to dismiss tests the legal sufficiency of the claim, not the facts that support it." *Id.* All facts alleged in the complaint must be taken as true, and all factual inferences must be resolved in favor of the non-moving party. *Id.* "Dismissal for lack of standing is appropriate only where it appears the plaintiff cannot be granted relief under any set of facts." *Id.* Review of a dismissal under Trial Rule 12(B)(6) is de novo, and thus deference to the trial court's decision is not required. *Schulz*, 731 N.E.2d at 1043–44.

It is somewhat surprising, given the large volume of cases dealing with child custody disputes between a parent and a third party that have arisen in various contexts in this state, that no Indiana appellate court has ever directly addressed or answered the question before us: what is the meaning, relevance, and scope of subsection (2) of Indiana Code Section 31–17–2–3? That section in its entirety reads:

A child custody proceeding is commenced in the court by:

(1) a parent by filing a petition under IC 31–15–2–4 [governing commencement of dissolution actions], IC 31–15–3–4 [governing commencement of legal separation actions], or IC 31–16–2–3 [governing commencement of child support actions]; or

(2) a person other than a parent by filing a petition seeking a determination of custody of the child.

We are finally called upon today to interpret this subsection.[3]

2. Jenkins' petition was not incidental to the dissolution action between Warren and Godbey because that cause of action terminated upon Warren's death. *See Fitzgerald v. Travelers Ins. Co.*, 567 N.E.2d 159, 162 (Ind.Ct. App.1991), *trans. denied.*

3. We seem to have questioned whether a third party could directly seek custody of a child under the predecessor to Section 31–17–2–3(2) in *In re McGuire*, 487 N.E.2d 457, 458 n. 1 (Ind.Ct.App.1985). We did not give a definitive answer to the question, however, noting that answering the question "must await a

The interpretation of a statute is a question of law. *Indiana Family & Social Services Admin. v. Radigan,* 755 N.E.2d 617, 620 (Ind.Ct.App.2001). "If a statute is unambiguous, that is, susceptible to but one meaning, we must give the statute its clear and plain meaning." *Bolin v. Wingert,* 764 N.E.2d 201, 204 (Ind. 2002). If a statute is ambiguous and susceptible to multiple interpretations, however, we must try to ascertain the legislature's intent and interpret the statute so as to effectuate that intent. *Id.* "We presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results." *Id.* When construing a statute, all sections of an act should be viewed together. *Saylor v. State,* 765 N.E.2d 535, 564 (Ind. 2002). In ascertaining legislative intent when faced with an ambiguous statute, we presume that the legislature did not enact a useless provision such that if statutory provisions are in conflict, no part of a statute should be rendered meaningless but should be reconciled with the rest of the statute. *Rheem Mfg. Co. v. Phelps Heating & Air Conditioning, Inc.,* 746 N.E.2d 941, 948 (Ind.2001) (quoting *Robinson v. Wroblewski,* 704 N.E.2d 467, 474–75 (Ind.1998)).

On its face, Section 31–17–2–3 does not appear to be ambiguous: the plain language of the statute allows the parents of a child to file a child custody petition in conjunction with a petition for divorce, legal separation, or child support, *"or"* any person "other than a parent" to file a child custody petition, apparently at any time and without limitation. Other parts of Title 31, "Family Law," and cases in this area, however, have rendered the section ambiguous.

To begin with, Indiana Code Section 31–9–2–13 defines " 'Child', for purposes of ... IC 31–17, [as] a child or children of both parties to the marriage." Cases from this court and our supreme court have construed the predecessor to this section, in conjunction with the predecessor to Section 31–17–2–3,[4] as meaning that a court in a dissolution action has no jurisdiction to award custody of a child to one who is not the child's parent, such as a stepparent or grandparent, because the child is not a "child" according to the statutory definition. A stepchild or grandchild is not a "child ... of both parties to the marriage." *See Russell v. Russell,* 682 N.E.2d 513, 515–16 (Ind.1997); *State ex rel. McCarroll v. Marion County Superior Court No. 1,* 515 N.E.2d 1124, 1125 (Ind. 1987); *Caban v. Healey,* 634 N.E.2d 540, 542–43 (Ind.Ct.App.1994), *trans. denied* (1995); *but see Moody v. Moody,* 488 N.E.2d 378, 382 (Ind.Ct.App.1986) (holding trial court could award custody of child to grandparents in dissolution proceeding); *Fox v. Fox,* 466 N.E.2d 789, 791 (Ind.Ct. App.1984), *trans. denied* (1985) (rejecting argument of parties to dissolution action that trial court lacked jurisdiction to award custody of child to public welfare department); *Lord v. Lord,* 443 N.E.2d 847, 849 n. 2 (Ind.Ct.App.1982) (stating trial court in a dissolution action may award custody of child to a third party).[5] *Russell* and the

---

case in which it is properly presented and briefed by the parties on each side of the issue." *Id.* Eighteen years later, that case has arrived.

**4.** The family law statutes were entirely recodified in 1997. The predecessor to the current Section 31–17–2–3 was Indiana Code Section 31–1–11.5–20(a) which, identical to the cur-

rent provision, allowed "a person, other than a parent" to commence a child custody proceeding "by filing a petition seeking a determination of custody of the child."

**5.** The *McCarroll* court did not mention or explicitly overrule *Moody, Fox,* or *Lord.* To the extent *Moody, Fox,* and *Lord* directly conflict

other cases that reflect its holding, however, made no mention of and did not analyze the predecessor of Section 31–17–2–3(2) and its provision allowing "a person other than a parent" to commence a child custody proceeding.

■ Recently, we concluded that the absolute bar against a trial court awarding custody of a child to a third party in the course of a dissolution action was removed by the 1999 de facto custodian amendments to the child custody statutes. These amendments clarify that where a party meets the definition of a de facto custodian under Indiana Code Section 31–9–2–35.5, he or she has standing to pursue custody of a child and indeed must be made a party to a marital dissolution or paternity action custody proceeding.[6]  *See In re L.L. & J.L.*, 745 N.E.2d 222, 229–30 (Ind.Ct.App.2001), *trans. denied.*  In *Nunn v. Nunn*, 791 N.E.2d 779 (Ind.Ct. App.2003), we were asked to decide whether a trial court hearing a dissolution action lacked jurisdiction to award custody of a child to the husband, where the child was not the husband's biological child.  Relying on the de facto custodian amendments, we held that "the trial court did have jurisdiction to determine custody orders concerning [the child] even though she was not a child of the marriage."  *Id.* at 784.  We remanded to the trial court for consideration of whether the husband, who clearly appears to have been a de facto custodian of the child based on the fact that he lived with the child for her entire life until the divorce proceedings began, was entitled to custody of the child pursuant to the de facto custodian statutes.  *Id.* at 785.

We were not called upon in *Nunn* to address whether a third party or non-parent of a child may have standing to pursue custody of a child in a direct proceeding that is not ancillary to a divorce, legal separation, or child support proceeding, pursuant to Indiana Code Section 31–17–2–3(2).  Godbey contends, however, in reliance upon *Nunn* that because there is no claim in Jenkins' petition that he was a de facto custodian of G.J., he was not entitled to file a direct third party child custody action under Indiana Code Section 31–17–2–3(2).  After careful consideration, we disagree that a party must claim to be a de facto custodian in order to pursue custody of a child under that section in an independent cause of action.

First and foremost, we conclude that Godbey's construction of the statute would render it effectively meaningless or place words in the statute that are not currently there.  Again, Section 31–17–2–3(2) allows "a person other than a parent" to commence a child custody proceeding.  If the legislature had intended to allow *only* de facto custodians to file a direct child custody action, it would have been a simple matter to amend Section 31–17–2–3(2) at the time the de facto custodian statutes were added in 1999 to expressly provide that a de facto custodian, rather than "a person other than a parent," could file a child custody petition.  The fact that the de facto custodian statutes were only added in 1999, while the language in Section 31–17–2–3(2) existed well before then, also indicates that "a person other than a parent" is not limited to de facto custodians.  Otherwise, Section 31–17–2–3(2) would have had no meaning or effect whatsoever prior to 1999, and we presume that the

---

with *McCarroll,* however, they must have been implicitly overruled.

**6.** We observe that we used the word "clarify" when describing the effect of the de facto

custodian statutes on a third party's ability to seek custody of a child, thus suggesting that such ability implicitly existed before the statutes were enacted.

legislature does not enact useless provisions.

We also observe that the placement of Section 31–17–2–3(2) suggests that it is relevant not just to dissolution proceedings. The full name of the title, article, and chapter under which this section falls is "Family Law: Custody and Visitation Rights—Actions for Child Custody and Modification of Child Custody Orders." There is no mention of marital dissolution, which has its own article, number 15, "Dissolution of Marriage and Legal Separation." The only explicit reference to dissolution of marriage in Section 31–17–2–3 is in subsection (1), which provides that a child's parent may petition for child custody in conjunction with a marital dissolution, legal separation, or child support petition. There is no such reference or limitation in subsection (2).

We must also address the definition of "child" found in Indiana Code Section 31–9–2–13(a), which expressly applies to Indiana Code Article 31–17 and provides that a " 'Child' … means a child or children of both parties to the marriage." In the context of custody proceedings incidental to a marital dissolution, this term has been defined to mean only the biological or adopted children of both parties in the dissolution action. *See Russell*, 682 N.E.2d at 516–17. This seems clearly to mean that a trial court adjudicating a marital dissolution only has jurisdiction to award custody of a child to a natural or adoptive parent of the child or, after 1999, to a de facto custodian. *See Nunn*, 791 N.E.2d at 783–84.

■ This still leaves unresolved the meaning of Section 31–17–2–3(2) and its provision allowing a person "other than a parent" to pursue custody of a child. Obviously, a child with respect to a person "other than a parent" is not a "child" as Section 31–9–2–13(a) or as *Russell* defines that word. But if a trial court lacks jurisdiction at all times to award custody of a child to someone other than a parent under Chapter 31–17–2, Section 31–17–2–3(2) would appear to be entirely meaningless: why would a person "other than a parent" be given express permission to commence a child custody proceeding "by filing a petition seeking a determination of custody of the child" if, in fact, that person could not actually be awarded custody? Such a construction of the statute would be absurd and would effectively amount to ignoring the existence and plain language of Section 31–17–2–3(2). We are compelled to conclude that Section 31–17–2–3(2) means what it says: any person "other than a parent" may seek custody of a child by initiating an independent cause of action for custody that is not incidental to a marital dissolution, legal separation, or child support action. This does not conflict with *Russell*, which did not address the predecessor to Section 31–17–2–3(2) and solely dealt with a child custody proceeding that was incidental to a marital dissolution action.

■ Furthermore, we believe that allowing a third party to seek custody of a child by filing a direct cause of action for custody of a child pursuant to the child custody statutes of Indiana Code Chapter 31–17–2 is wholly consistent with Indiana public policy.[7] That policy has long recognized that if a parent is unfit or otherwise unable to care for a child, it may be in the child's best interests to be placed in the custody of a third party. *See, e.g., Gil-*

---

7. The paternity statutes also contain provisions relating to child custody but no separate provisions for initiating a child custody proceeding. Rather, custody is awarded "in the initial determination" if there is a finding that a man is the child's biological father in the underlying paternity action. Ind.Code § 31–14–10–1.

christ v. Gilchrist, 225 Ind. 367, 372, 75 N.E.2d 417, 419 (1947). Of course, a child's natural parent is presumed to be entitled to custody of his or her child as opposed to a third party, and that presumption can only be overcome by clear and convincing evidence that the child's best interests would be substantially and significantly served by placement with another person. *In re B.H.*, 770 N.E.2d 283, 287 (Ind.2002).

The difficulty is that many cases have addressed third party versus natural parent child custody disputes while not being explicit about the proper forum or proceeding for such a contest. Many cases have arisen in the context of a third party's petition for guardianship of a child under the probate code or a parent's challenge to the third party's continued guardianship. *See, e.g., id.* at 285. Others have addressed a parent's petition for a writ of habeas corpus as a means to obtain custody of a child from a third party. *See, e.g., Kissinger v. Shoemaker*, 425 N.E.2d 208, 210 (Ind.Ct.App.1981). In at least two cases, it appears that a third party filed a direct child custody petition, which action was not questioned or challenged by the parties, the trial courts, or this court on appeal as the proper forum for resolving a third party-natural parent custody dispute. *See Hunt v. Whalen*, 565 N.E.2d 1109, 1110 (Ind.Ct.App.1991) (stating that grandparents "petitioned for custody of" grandchild); *Teegarden v. Teegarden*, 642 N.E.2d 1007, 1008 (Ind.Ct.App.1994) (noting that stepmother filed "petition for custody" of child after father died and that trial court had, therefore, "entered into an analysis of the custody rights of natural parents versus third parties").

In *In re L.L. & J.L.*, we made the observation that "a guardianship proceeding [under the probate code] is, in essence, a child custody proceeding" that required

a significant amount of analysis beyond what was minimally required by the guardianship statutes. 745 N.E.2d at 227. We explored at some length the interconnectedness between the child custody statutes and the guardianship statutes where a child is concerned and noted, with respect to the presumption in favor of natural parents retaining or obtaining custody of his or her child, "the reasoning remains constant and the same in any situation" regardless of whether the underlying action technically is a child custody or guardianship proceeding. *Id.* at 230. We even judicially sanctioned referring to the "best interest" factors listed in the child custody statutes when determining if a third party should obtain custody of a child, even if the proceeding is technically a guardianship proceeding rather than a direct child custody proceeding. *Id.* at 231. Other cases that have addressed a third party's attempt to gain or retain custody of a child through a guardianship proceeding have routinely referred to "custody" of the child interchangeably with "guardianship" of the child. *See, e.g., In re B.H.*, 770 N.E.2d at 287–88.

Certainly, Godbey has not cited nor are we aware of any case stating that a third party who wishes to obtain custody of a child *must* seek a guardianship under the probate code rather than seeking custody directly under the family law code. Indeed, it frankly would seem to make more sense to file an action that is truly a child custody action under the child custody statutes set forth in the family law code. It also appears to place form over substance to insist that a third party who wishes to obtain custody of a child must proceed under the guardianship statutes, where the law governing either type of proceeding will overlap significantly and especially where the plain language of Indiana Code Section 31–17–2–3(2) provides third parties with the option of di-

rectly filing a child custody petition under the family law code. Therefore, we conclude that Jenkins had standing to file a direct action for custody of G.J. under that section, as set forth in his petition filed with the trial court.

### Conclusion

Indiana Code Section 31–17–2–3(2) provides third parties with the option to pursue custody of a child in a direct cause of action. We reverse the dismissal of Jenkins' petition seeking custody of G.J. pursuant to that section and remand for consideration of whether he is entitled to custody of his niece under the law governing third party-natural parent custody disputes.

Reversed and remanded.

DARDEN, J., and MAY, J., concur.