**In re the GUARDIANSHIP
OF A.L.C., a Minor.**

No. 73A04–0805–CV–264.

Court of Appeals of Indiana.

March 12, 2009.

**344**

Kelley Yeager Baldwin, Yeager Good & Baldwin, Shelbyville, IN, Attorney for Appellants.

J. Lee McNeely, Amanda O. Blackketter, McNeely Stephenson Thopy & Harrold, Shelbyville, IN, Attorneys for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Intervenors Kim and Karen Conover (collectively "the Conovers"), Kent and Brenda Smith (collectively "the Smiths"), and Bradley J. and Jacqueline Jones ("the Joneses") are all grandparents of the minor A.L.C. In the proceedings below, the Smiths and Brad Jones ("Jones") on the one hand and the Conovers on the other hand sought guardianship over the person and estate of A.L.C. The Conovers now appeal from the trial court's orders granting temporary and permanent guardianship A.L.C. to the Smiths and Jones. The Conovers present the following issues for review:

1.  Whether the trial court abused its discretion when it awarded temporary guardianship of A.L.C. to Brad and Jacqueline Jones (collectively "the Joneses") and subsequently to the Smiths.

2.  Whether the trial court abused its discretion when it appointed permanent guardianship over the person of A.L.C. to the Smiths and over the estate of A.L.C. to the Smiths and Brad Jones.

On cross-appeal, the Smiths and Brad Jones present a single issue for review, namely, whether the trial court's visitation award to the Conovers was an abuse of discretion.

We affirm in part, reverse in part, and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

On August 27, 2005, Natalie Jones ("Mother") gave birth to a son, A.L.C. Mother was unmarried at the time, but the following day Dustin Conover ("Father") and Mother executed a joint paternity affidavit. Mother was addicted to alcohol, and Father had a criminal record and used illegal drugs. Mother and Father lived in a home purchased by Father's parents, the Conovers. In addition to buying the house for Mother and Father, the Conovers also provided the couple with money and watched A.L.C. Brenda Smith, Mother's mother, and Shirley Sider, mother's grandmother, also provided childcare for A.L.C. at times.

On May 23, 2007, Mother was killed in a single-car accident. At the time, the Conovers were watching A.L.C. for Mother. On May 25, Brenda Smith picked up A.L.C. from the Conovers' home and took him to the home of the Joneses, Mother's father and stepmother. The Joneses then filed an Emergency Petition for the Appointment of Temporary Guardians over the Person and Estate of a Minor Child ("Emergency Petition"). The court sent notice of the petition to Father, the Joneses, the Smiths, and the Conovers via certified mail. In the petition the Joneses stated that they were unaware of any adjudication of paternity. As a result, the petition listed only the Joneses and the Smiths as persons most closely related by blood to A.L.C. The Joneses and the Smiths waived a hearing, and the court granted the petition, awarding temporary guardianship of A.L.C. to the Joneses.

On June 5, Father filed his verified petition for appointment of guardian ad litem and counsel for A.L.C. pursuant to Indiana Code Section 29–3–2–3. Father attached the joint paternity affidavit as an exhibit. He also filed a petition for parenting time and request for a hearing. On June 12, Brad Jones and Brenda Smith filed an Amended Emergency Petition for Appointment of Temporary Co–Guardians Over the Person and Estate of a Minor Child ("Amended Emergency Petition"). The following day, the Joneses filed a motion for testing to determine illegal drug use by Father and a motion for genetic marker testing to establish paternity. And on June 21, Brad Jones and the Smiths filed a petition for the appointment of the Smiths as permanent guardians over the person of A.L.C. and the Smiths and Brad Jones over the estate of A.L.C. The Smiths and Brad Jones also filed a verified petition for the appointment of a guardian ad litem.

On July 5, the court held a hearing on "outstanding issues[.]" Appellants' App. at 4. At that hearing, Father testified that the Smiths should be A.L.C.'s guardian if he were to test positive for drugs. After taking evidence, the court recessed and continued the hearing to August 1. Before adjourning, the court found "more than sufficient evidence to continue" the temporary guardianship as originally ordered. Transcript at 123. But, by agreement of the Joneses, the Smiths, and Father, the court appointed the Smiths to be temporary guardians over the person of A.L.C. and appointed the Smiths and Brad Jones as temporary guardians over the estate of A.L.C.[1] The court also ordered a hair follicle drug screen for Father, appointed a guardian ad litem for A.L.C., directed visi-

---

1. The Joneses also have a young son, who has special needs. Their son's doctor recommended that it was not in their son's best interest for them to continue as guardians for A.L.C.

tation for Father, and ordered a paternity test.

On August 3, the Smiths and/or the Joneses[2] filed a motion to modify visitation to be supervised by a third party. On August 14, the Conovers filed a motion to intervene, a notice of intention to seek appointment as co-guardians, a verified petition for custody/parenting time evaluation, and a motion to vacate the CASA appointment and home study. And in late September, Father withdrew his bid for custody of A.L.C.

On December 13, 2007, the Conovers filed a petition for the removal of co-guardians along with Father's Nomination of Kim and Karen Conover to be guardians. On that same date, the court heard additional evidence regarding permanent guardianship. The court resumed that hearing on February 26, 2008. The court heard evidence on the competing petitions for permanent guardianship and on the Conovers' petition to remove co-guardians. At the conclusion of the hearing, the court denied the Conovers' petition to remove co-guardians and ordered the parties to submit proposed findings of fact and conclusions thereon.

On April 3, 2008, the court entered its findings of fact and conclusions ("Findings") thereon regarding permanent guardianship, in part as follows:

3. [Father] is not requesting physical custody of [A.L.C.]

* * *

7. On July 5, 2007, [Father], the Joneses and the Smiths agreed that the Smiths should serve as temporary guardians over the person of [A.L.C.]

and that the Smiths and Bradley Jones should serve as temporary guardians over the estate of [A.L.C.], which agreement was approved by this Court. Bradley Jones and the Smiths have served as guardians, in this capacity, since July 5, 2007. The Conovers did not intervene as parties in this matter until August 15, 2007.

* * *

9. For several years prior to [A.L.C.'s] birth and until [Mother's] death, [Father] and [Mother] abused drugs and alcohol. [Father] has continued to use illegal substances and violate the law during the pendency of these proceedings.

10. This Court finds that it is in [A.L.C.'s] best interests that [A.L.C.] has parenting time with [Father], which should be supervised until further order of this Court. It is this Court's hope that [Father] will make the changes in his behavior that are necessary for him to become a responsible and effective parent.

11. [Father] testified only at the hearing on July 5, 2007. Among other things he stated:

a. That if he tested positive for drugs, then he believed Brenda and Kent Smith should care for [A.L.C.] A hair follicle drug test ordered by the Court upon samples submitted by [Father] on July 9, 2007, was positive for cocaine and marijuana.

b. That recently he told Brenda Smith that he knew that the guardianship wherein the Smiths were the appointed guardians was best for [A.L.C.,] (though he later executed a

---

**2.** The Chronological Case Summary ("CCS") indicates that "petitioners" filed the motion to modify visitation to be supervised by a third party. Appellants' App. at 4. But the CCS does not indicate to which petitioners, the Joneses or the Smiths, that entry refers, nor have the parties supplied a copy of the motion in the record on appeal.

Nomination of the Conovers to be Guardians);

c. That he recently told Brenda Smith that he knew [Mother] would have wanted Brenda to raise [A.L.C.] until he "could get on his feet."

\* \* \*

12. Prior to August 14th, the Conovers had supported [Father] as he sought custody of [A.L.C.], including paying for [Father's] attorney and attending the July 5th hearing to support [Father].

13. At all times relevant to these proceedings, [Father] has been financially dependent upon the Conovers.

14. Immediately prior to [Mother's] death, she and [A.L.C.] resided with [Father] in a house owned by the Conovers.

15. [Mother] was [A.L.C.'s] primary caregiver.

16. [Mother] would often have family members provide care for [A.L.C.], when she was working or doing errands. Those family [members] included Karen Conover, Shirley Sider, and Brenda Smith.

17. [A.L.C.] has always been a thriving, happy, healthy baby. This has continued while Brenda and Kent Smith have been his temporary guardians.

18. [A.L.C.] had a strong, loving, normal mother-son bond with [Mother].

19. [A.L.C.] has strong, emotional bonds with petitioners Brenda [and] Kent Smith. [A.L.C.] also has very good relationships with interveners Kim [and] Karen Conover, and with his grandfather and step-grandmother Bradley and Jacqueline Jones.

20. The evidence regarding whom [Mother] would want to care for [A.L.C.] in the event of her death is conflicting and consists mainly of hearsay statements. Mother never nominated anyone to be [A.L.C.'s] guardian in writing pursuant to [Indiana Code Section] 29–3–5–5(a)(4). The Court finds that her desire with regard to this question is unknown.

21. The Smiths have a good relationship with [Father]. Before [Mother's] death, the Smiths regularly would go to [Father's] house for meals and visits with the family. [Father] told Kent Smith that he was more of a father figure to him than his own father.

22. The Smiths have been flexible in [Father's] parenting time schedule, and the Smiths have made [A.L.C.] available to the Conovers beyond the scheduled times.

23. The Smiths have demonstrated that they will encourage and facilitate [A.L.C.'s] relationship with [Father] and the [Conovers] giving due regard to [A.L.C.'s] safety.

24. Petitioners and the Conovers agree that Father's parenting time should be supervised at this time.

25. The Smiths also have a very good relationship with Bradley and Jacqueline Jones, and all petitioners have indicated that they can work together so that [A.L.C.] can spend time with the family on his mother's side.

26. Brenda Smith quit her previous employment and has stayed home with [A.L.C.] since becoming his temporary guardian. Brenda babysits for several other grandchildren close in age to [A.L.C.] [A.L.C.] also plays frequently with Bradley and Jacqueline's son [B.J.], who is three years old. [A.L.C.] has almost daily contact with other children.

27. Expert witness Dr. Richard Lawlor testified in this matter after reviewing the home study report, the CASA report, certain interrogatory answers, and having a meeting with Brenda and Kent

Smith and [A.L.C.] Dr. Lawlor opined as follows:

a. [A.L.C.] is a delightful child who is very out-going.

b. [A.L.C.] has a positive relationship with the Smiths, and there is no question that [A.L.C.] has formed a very secure bond or attachment with both Brenda and Kent; this bond is one of the most important factors the court should consider;

c. It would be doubtful that the Conovers could present a superior relationship or parenting skills than the Smiths;

d. The fact that [A.L.C.] is interacting with other children several days a week with the Smiths is a significant and positive factor in favor of them as guardians;

e. The Smiths do not blame the Conovers for [Mother's] death;

f. Dr. [Lawlor] had concerns should [sic] that the Conovers seem unable to set limits for [Father] and may have inadvertently enabled [him] and [Mother] in their negative lifestyles. Dr. Lawlor also found it troublesome that the Conovers assisted [Father] in his efforts to obtain custody of [A.L.C.] at the beginning of this case in spite of his obvious problems.

g. Dr. Lawlor has no concerns whatsoever should the court make [the] Smiths [A.L.C.'s] permanent guardians.

h. Stability is very important for [A.L.C.] at this time. He has lived with the Smiths since July 5, 2007. To remove [A.L.C.] from their home at this time would disrupt a routine that [A.L.C.] is obviously very secure in, thereby creating a risk factor for him.

i. In Dr. Lawlor's expert opinion, it is in [A.L.C.'s] best interests to remain living with [the] Smiths in a permanent guardianship relationship.

j. In Dr. Lawlor's expert opinion, [A.L.C.] should not be constantly shifted from one place to another. He needs to be mostly in one place—the [Smiths']—and have contact with or visit both sets of other grandparents on a reasonable and regular schedule.

28. While the Conovers provided considerable, safe and loving care for [A.L.C.] on a significant basis prior to [Mother's] death, [A.L.C.] did not reside with them.

29. The Court finds that the Conovers have an unrealistic perception of [Father's] substance abuse and legal problems and as such are less likely to assure a permanent, stable and secure environment for [A.L.C.] than the Smiths.

* * *

## CONCLUSIONS OF LAW

* * *

2. On Friday, May 25, 2007, [A.L.C.] was in the immediate care and custody of petitioners Bradley and Jacqueline Jones when they filed and obtained an emergency guardianship.

3. Due to [Mother's] death and [Father's] substance abuse and legal problems, this Court determined on July 5, 2007, that it was necessary to continue the emergency temporary guardianship.

4. On July 5, 2007, and continuing to the present, Brenda and Kent Smith are qualified persons who are most suitable and willing to serve as [A.L.C.'s] guardians. *See* [Ind.Code § ] 29–3–5–3(a).

5. In argument to the Court, the Conovers' attorney asserted that the Court should not consider the Smith[s'] temporary custody of [A.L.C.] in making its

final custody determination, relying upon [Indiana Code Section] 31–15–4–13[,] which provides that issuance of a provisional order is without prejudice to the rights of the parties at the final hearing. While this Court notes that it would be improper to award a permanent guardianship to a person due to the mere fact that a party had been awarded temporary custody, this Court finds that it is permissible as part of a determination of the child's best interests for the court to consider the status and well-being of the child while in that temporary custodial relationship. See *Trost–Steffen v. Steffen,* 772 N.E.2d 500 (Ind.Ct.App.2002), *reh'g denied.*

6. This Court is required to appoint, as guardian of a minor and the property of the minor, a person who is most suitable and willing to serve, having due regard to, in pertinent part, the relationship of the proposed guardian to the minor and the best interest of the minor and the property of the minor. [Ind.Code § ] 29–3–5–4.

7. When considering who should be appointed as guardian of a minor, certain persons are entitled to priority, in the order set forth in the statute. [Ind. Code § ] 29–3–5–5(a). Here the only pertinent provisions are [Indiana Code Section] 29–3–5–5(a)(4) the parent of the incapacitated person and [Indiana Code Section] 29–3–5–5(a)(5) a person related to the incapacitated person with whom the incapacitated person has resided for more than six (6) months prior to the filing of the petition. The Court finds that neither of those provisions applies. The surviving parent of [A.L.C.], [Father], has withdrawn his request for custody and [A.L.C.] lived with [Mother] and [Father] for the six months prior to the filing of the petition by the Smiths and with the Smiths for nearly three months prior to the petition filed by the Conovers.

8. A guardianship proceeding is, in essence, a child custody proceeding, which requires the trial court to consider the child custody statutes and case law, in addition to the guardianship statutes, when making its determination. See generally, *In re the Guardianship of L.L.,* 745 N.E.2d 222 [ (Ind.Ct.App. 2001),] and *Jenkins v. Godbey,* 796 N.E.2d 756 [ (Ind. Ct.App.2003) ].

9. The court shall determine custody and enter a custody order in accordance with the best interests of the child. [Indiana Code Section] 31–17–2–8 sets forth the factors to be considered in coming to that conclusion. Here, the Court finds that the factors set forth in that statute that are applicable to the facts found herein establish that it is in [A.L.C.'s] best interests that the Smiths be made permanent co-guardians over the person of [A.L.C.] and that Bradley Jones be appointed co-guardian over his estate as they are the more suitable and qualified available persons.

10. The Court finds that [A.L.C.] was not cared for by a de facto custodian, as defined by [Indiana Code Section] 31–9–2–35.5[,] prior to [Mother's] death.

\* \* \*

12. Until further order of this Court, Father's parenting time should be supervised by Kim and Karen Conover. (See proposed Order for specific schedule.) [sic] Father may not exercise his parenting time if he is under the influence of drugs or alcohol.

13. The Conovers are entitled to visitation pursuant to [Indiana Code Section] 31–17–4–1. The Court further finds that the Conovers should have the visitation as hereinafter ordered.... [3]

---

**3.** The details for the Conovers' and Father's visitation schedule will be discussed in Issue

Appellants' App. at 10–19. The court also entered a separate Order Appointing Permanent Guardians of the Person and Estate of Minor ("Permanent Guardianship Order"). The Conovers now appeal, and the Smiths and Brad Jones cross-appeal.

## DISCUSSION AND DECISION

### Issue One: Temporary Guardianship

■ The Conovers contend that the trial court abused its discretion when it awarded temporary guardianship of [A.L.C.] to the Joneses and later to the Smiths and Brad Jones. Specifically, the Conovers argue that the emergency petition filed by the Joneses on May 25, 2007, was "deficient in many respects and, in some respects, misleading." Appellants' Brief at 15. The Smiths and Brad Jones counter that the Conovers have waived the issue on appeal because they have "failed to cite to any legal authority in their Appellants' brief to support their alleged ability to challenge such rulings and agreements that occurred before they were parties to the case[.]" Appellees' Brief at 17. In essence, the Smiths and Brad Jones argue that the Conovers have not established standing to challenge the temporary guardianship order. We must agree.

■ An intervenor is treated as if it were an original party and has equal standing with the parties. *Mercantile Nat'l Bank v. Teamsters Union Local # 142 Pension Fund*, 668 N.E.2d 1269, 1271 (Ind.Ct.App.1996). But an intervenor is not permitted to relitigate matters already determined in the case. *Id.* A party's intervention after judgment binds the intervenor to all prior orders and judgments in the case. *Id.* Thus, in *Mercantile National Bank*, the court held that agreed judgments entered by the trial court be-

fore the intervention "were conclusive as adjudications by the parties" and the intervenor was "bound by those judgments." *Id. See also Home Builder's Ass'n of Ind., Inc. v. Ind. Util. Regulatory Comm'n*, 544 N.E.2d 181, 184–85 (Ind.Ct.App.1989) (question of intervenor's standing depends on whether issue raised on appeal is subject to waiver by original party).

Here, the Conovers were served with the initial Emergency Petition, but they did not respond or seek to become parties to the proceedings until much later. The trial court entered its order granting the Emergency Petition on May 25, 2007, the date the petition was filed. Brad Jones and Brenda Smith filed the Amended Emergency Petition on June 12. At the hearing on July 5, the court found "more than sufficient evidence to continue" the temporary guardianship as originally ordered. Transcript at 123. But, at the hearing, the Joneses, the Smiths, and Father had agreed that the Smiths should be appointed temporary guardians over the person of A.L.C. and that the Smiths and Brad Jones should be appointed temporary guardians over the estate of A.L.C. At the conclusion of the hearing, the court continued the temporary guardianship in accordance with the parties' agreement.

The Conovers first asked to intervene in the guardianship proceeding on August 14, 2007, after entry of the court's orders on the Emergency Petition and the Amended Emergency Petition. Under *Mercantile National Bank*, the Conovers are bound by the temporary guardianship orders. Thus, the Conovers cannot challenge those orders here.

### Issue Two: Permanent Guardianship

The Conovers next contend that the trial court abused its discretion when it denied the Conovers' request to be appointed the

Three below.

permanent guardians over the person and estate of A.L.C. The guardianship statute provides for the appointment of guardians for minors. *See* Ind.Code § 29–3–5–1(a) ("Any person may file a petition for the appointment of a person to serve as guardian for an incapacitated person or minor . . . ."). However, before a court is required to appoint a guardian for a minor, the court must find that the appointment is "necessary as a means of providing care and supervision of the physical person or property of the . . . minor."[4] Ind.Code § 29–3–5–3(a)(2).

The trial court is vested with discretion in making determinations as to the guardianship of an incapacitated person or minor. *See* Ind.Code § 29–3–2–4; *Conrad v. Atkins (In re Atkins)*, 868 N.E.2d 878, 883 (Ind.Ct.App.2007), *trans. denied.* This discretion extends to both its findings and its order. *In re Atkins*, 868 N.E.2d at 883. Thus, we apply the abuse of discretion standard to review the trial court's findings and order, *Id.; V.S.D. v. Williams–Huston (In re Guardianship of V.S.D.)*, 660 N.E.2d 1064, 1066 (Ind.Ct.App.1996). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances presented, *J.M. v. N.M.*, 844 N.E.2d 590, 602 (Ind.Ct.App.2006), *trans. denied,* or if the court has misinterpreted the law, *In re Guardianship of V.S.D.*, 660 N.E.2d at 1066.

Because the court made special findings and conclusions thereon, we look to those findings to determine whether the court abused its discretion. *E.N. v. Rising Sun–Ohio County Cmty. Sch. Corp.*, 720 N.E.2d 447, 450 (Ind.Ct.App.1999), *trans. denied.* The findings will not be set aside unless clearly erroneous. *Id.* Findings of fact are clearly erroneous when the record lacks any facts or reasonable inferences to support them. *Id.* Further, because of the two-tiered standard of review applicable here, we also will not set aside the judgment unless clearly erroneous. *Id.* A judgment is clearly erroneous when unsupported by the findings of fact and conclusions thereon. *Id.*

Here, the Conovers maintain that the "evidence overwhelmingly supports the conclusion that the Conovers should have been appointed as co-guardians of the person and estate of [A.L.C.] and that the trial court abused its discretion in denying such appointment." Appellants' Brief at 21. In support, the Conovers argue that they were "[A.L.C.'s] caretakers a majority of the time[,]" Appellants' Brief at 21; that A.L.C.'s health has declined since he was placed with the Joneses and then the Smiths; that the Conovers are in a superior position to promote a positive and unimpaired relationship between A.L.C. and Father; and that the Smiths denied the Conovers court-ordered parenting time on three occasions. And regarding guardianship over A.L.C.'s estate, the Conovers allege that "significant omissions in the temporary co-guardians' inventory filed with the trial court on January 15, 2008, are alone[ ] sufficient evidence[ ] for this Court to conclude that the trial court abused its discretion in appointing Brad [Jones] and the Smiths as permanent co-guardians of [A.L.C.'s] estate." Appellants' Brief at 25.

But the trial court made findings that appointing the Smiths and Jones as co-guardians is in A.L.C.'s best interest. The Conovers have not shown that the record lacks any facts or reasonable inferences to support the court's findings or that the court's findings do not support its conclu-

---

**4.** The court must also find that the person is incapacitated or a minor. Ind.Code §§ 29–3–5–2, –3(a)(1). The parties do not dispute the trial court's finding that A.L.C. is a minor.

sions. Thus, the Conovers' arguments amount to a request that we reweigh the evidence, which we cannot do. *See E.N.,* 720 N.E.2d at 450. As a result, the Conovers' arguments must fail.

■ The Conovers further allege that they were "required to be appointed as [A.L.C.'s] co-guardians" under Indiana Code Sections 29–3–5–4 and –5. Appellants' Brief at 22. The choice of guardian is guided by statute. Indiana Code Section 29–3–5–4 provides, in relevant part, that the court shall appoint as a guardian a

qualified person or persons most suitable and willing to serve, having due regard to ...

(2) [a]ny request contained in a will or other written instrument[;]

* * *

(5) [t]he relationship of the proposed guardian to the individual for whom guardianship is sought[; and]

(7) [t]he best interest of the incapacitated person or minor and the property of the incapacitated person or minor.

And Indiana Code Section 29–3–5–5 provides, in relevant part:

(a) The following are *entitled to consideration* for appointment as a guardian under section 4 of this chapter *in the order listed:*

* * *

(4) A parent of an incapacitated person, or a person nominated by will of a deceased parent of an incapacitated person or by any writing signed by a parent of an incapacitated person and attested to by at least two (2) witnesses.

(5) Any person related to an incapacitated person by blood or marriage with whom the incapacitated person has resided for more than six (6) months before the filing of the petition.

(Emphases added).

Here, the Conovers argue that they are entitled to be appointed as A.L.C.'s guardians as a matter of law under Indiana Code Sections 29–3–5–4 and –5. Turning first to Indiana Code Section 29–3–5–5, the trial court found that Subsections (a)(4) and (5) were the only pertinent provisions. We agree. The trial court also found that neither subsection applied in the present case. But Section 29–3–5–5(a)(4) gives relative priority to a person nominated in a writing signed by a parent and attested to by at least two witnesses. Here, the Conovers submitted Father's Nomination of Kim and Karen Conover, a document witnessed by two people and in which Father asked that the Conovers be appointed guardians over the person and estate of A.L.C. Thus, Section 29–3–5–5(a)(4) applies to the present case. To the extent the court found to the contrary, we conclude that the court abused its discretion because the evidence does not support that finding.

■ But when selecting a guardian, the court must give "due regard" to the "best interest of the incapacitated person or minor and the property of the incapacitated person or minor." Ind.Code § 29–3–5–4(7). "The court, acting in the best interest of the incapacitated person or minor, may pass over a person having priority and appoint a person having a lower priority or no priority under" Indiana Code Section 29–3–5–5. Ind.Code § 29–3–5–5(b). In essence, the key consideration in selecting a guardian for A.L.C. was whether the choice of guardian was in A.L.C.'s best interest. Thus, while the Conovers fell within one of the priority categories in Section 29–3–5–5, entitling them to *consideration* for appointment as A.L.C.'s guard-

ian, that status did not "entitle" them to the appointment.[5]

Here, the court made the following findings in support of its conclusion that A.L.C.'s best interest would be served by the appointment of the Smiths as co-guardians over his person:

17. [A.L.C.] has always been a thriving, happy, healthy baby. This has continued while Brenda and Kent Smith have been his temporary guardians.

18. [A.L.C.] had a strong, loving, normal mother-son bond with [Mother].

19. [A.L.C.] has strong, emotional bonds with petitioners Brenda [and] Kent Smith. [A.L.C.] also has very good relationships with interveners Kim [and] Karen Conover, and with his grandfather and step-grandmother Bradley and Jacqueline Jones.

20. The evidence regarding whom [Mother] would want to care for [A.L.C.] in the event of her death is conflicting and consists mainly of hearsay statements. Mother never nominated anyone to be [A.L.C.'s] guardian in writing pursuant to [Indiana Code Section] 29–3–5–5(a)(4). The Court finds that her desire with regard to this question is unknown.

21. The Smiths have a good relationship with [Father]. Before [Mother's] death, the Smiths regularly would go to [Father's] house for meals and visits with the family. [Father] told Kent Smith that he was more of a father figure to him than his own father.

22. The Smiths have been flexible in [Father's] parenting time schedule, and the Smiths have made [A.L.C.] available to the Conovers beyond the scheduled times.

23. The Smiths have demonstrated that they will encourage and facilitate [A.L.C.'s] relationship with [Father] and the [Conovers] giving due regard to [A.L.C.'s] safety.

\* \* \*

25. The Smiths also have a very good relationship with Bradley and Jacqueline Jones, and all petitioners have indicated that they can work together so that [A.L.C.] can spend time with the family on his mother's side.

26. Brenda Smith quit her previous employment and has stayed home with [A.L.C.] since becoming his temporary guardian. Brenda babysits for several other grandchildren close in age to [A.L.C.] [A.L.C.] also plays frequently with Bradley and Jacqueline's son [B.J.], who is three years old. [A.L.C.] has almost daily contact with other children.

27. Expert witness Dr. Richard Lawlor testified in this matter after reviewing the home study report, the CASA report, certain interrogatory answers, and having a meeting with Brenda and Kent Smith and [A.L.C.] Dr. Lawlor opined as follows:

a. [A.L.C.] is a delightful child who is very out-going.

b. [A.L.C.] has a positive relationship with the Smiths, and there is no question that [A.L.C.] has formed a very secure bond or attachment with both Brenda and Kent; this bond is one of the most important factors the court should consider;

c. It would be doubtful that the Conovers could present a superior rela-

---

5. The Conovers' relationship as grandparents of A.L.C. is identical to the Smiths' and Brad Jones' relationships to the child. Thus, the consideration given to that relationship under Indiana Code Section 29–3–5–4(5) does not give the Conovers priority and, therefore, need not be addressed here.

tionship or parenting skills than the Smiths;

d. The fact that [A.L.C.] is interacting with other children several days a week with the Smiths is a significant and positive factor in favor of.them as guardians;

e. The Smiths do not blame the Conovers for [Mother's] death;

f. Dr. [Lawlor] had concerns should [sic] that the Conovers seem unable to set limits for [Father] and may have inadvertently enabled [him] and [Mother] in their negative lifestyles. Dr. Lawlor also found it troublesome that the Conovers assisted [Father] in his efforts to obtain custody of [A.L.C.] at the beginning of this case in spite of his obvious problems.

g. Dr. Lawlor has no concerns whatsoever should the court make [the] Smiths [A.L.C.'s] permanent guardians.

h. Stability is very important for [A.L.C.] at this time. He has lived with the Smiths since July 5, 2007. To remove [A.L.C.] from their home at this time would disrupt a routine that [A.L.C.] is obviously very secure in, thereby creating a risk factor for him.

i. In Dr. Lawlor's expert opinion, it is in [A.L.C.'s] best interests to remain living with [the] Smiths in a permanent guardianship relationship.

j. In Dr. Lawlor's expert opinion, [A.L.C.] should not be constantly shifted from one place to another. He needs to be mostly in one place—the [Smiths']—and have contact with or visit both sets of other grandparents on a reasonable and regular schedule.

28. While the Conovers provided considerable, safe and loving care for [A.L.C.] on a significant basis prior to [Mother's] death, [A.L.C.] did not reside with them.

29. The Court finds that the Conovers have an unrealistic perception of [Father's] substance abuse and legal problems and as such are less likely to assure a permanent, stable and secure environment for [A.L.C.] than the Smiths.

Appellants' App. at 12–15.

Again, the trial court was required to give due regard to the Conovers in selecting guardians for A.L.C., given Father's nomination of the Conovers and their relationship as A.L.C.'s grandparents. *See* Ind.Code § 29–3–5–4(2), (5). And the nomination by Father gave them priority in consideration of the appointment of guardians. *See* Ind.Code § 29–3–5–5(a)(4). But the best interest of A.L.C. is the overriding factor the court must consider when appointing a guardian. *See* Ind.Code §§ 29–3–5–4(7), –5(b). The Conovers have not shown that the court's findings are not supported by the record or that the findings do not support the court's conclusions. Thus, the Conovers' argument that they were entitled to be appointed co-guardians over A.L.C. merely by virtue of Father's nomination must fail.

## CROSS–APPEAL

■ On cross-appeal, the Smiths and Brad Jones contend that the trial court erred when it granted to the Conovers visitation with A.L.C. because the visitation schedule exceeds that provided under the Grandparent Visitation Act, Indiana Code Sections 31–17–5–1 through –10 ("the Act"). This court has described the Act as follows:

As an initial matter, we note that by enacting the Grandparent Visitation Act, our General Assembly has recognized that "a child's best interest is often served by developing and maintaining

contact with his or her grandparents." However, grandparents "do not have the legal rights or obligations of parents," and "do not possess a constitutional liberty interest in visitation with their grandchildren." In [contrast], parents do have a "constitutionally recognized fundamental right to control the upbringing, education, and religious training of their children." Furthermore, in "our traditions and collective conscience," we have acknowledged that parents "have the right to raise their children as they see fit." Therefore, when it drafted the Grandparent Visitation Act, our General Assembly had to balance two competing interests: "the rights of parents to raise their children as they see fit and the rights of grandparents to participate in the lives of their grandchildren."

*McCune v. Frey,* 783 N.E.2d 752, 755–56 (Ind.Ct.App.2003) (internal citations omitted).

■ Under the relevant provisions of the Act, a child's grandparent may seek visitation rights if the child was born out of wedlock and the father has established paternity. Ind.Code § 31–17–5–1(a), (b). When a trial court enters a decree granting or denying grandparent visitation, it must set forth findings of fact and conclusions thereon in that decree. Ind.Code § 31–17–5–6; *McCune,* 783 N.E.2d at 757. In those findings and conclusions, the trial court should address: (1) the presumption that a fit parent acts in his or her child's best interests; (2) the special weight that must be given to a fit parent's decision to deny or limit visitation; (3) whether the grandparent has established that visitation is in the child's best interests; and (4) whether the parent has denied visitation or has simply limited visitation. *McCune,* 783 N.E.2d at 757. Also, in determining the best interests of the child, the trial court "may consider whether a grandparent has had or has attempted to have meaningful contact with the child." *See* Ind.Code § 31–17–5–2.

Typically, the determination of whether granting grandparent visitation rights is in a child's best interests is a matter for the trial court's discretion, reversible only upon a showing of an abuse of that discretion. *Hoeing v. Williams,* 880 N.E.2d 1217, 1221 (Ind.Ct.App.2008) (citation omitted). " 'An abuse of discretion exists where the trial court's decision is clearly against the logic and effects of the facts and circumstances before the trial court or the reasonable, probable deductions to be drawn therefrom.' " *Id.* (citation omitted).

Here, the Smiths and Jones contend that the trial court abused its discretion by awarding the Conovers visitation pursuant to the Indiana Parenting Time Guidelines. Specifically, they argue that the Act does not contemplate grandparent visitation to be as extensive as visitation under the Indiana Parenting Time Guidelines. We must agree.

The parties have not pointed to any specific request by the Conovers for visitation under the Act. Instead, the Conovers requested guardianship. But, when the trial court awarded guardianship to the Smiths and Brad Jones, it awarded visitation to the Conovers. In its Findings, the court stated, in relevant part:

10. This Court finds that it is in [A.L.C.'s] best interests that [A.L.C.] has parenting time with [Father], which should be supervised until further order of this Court. . . .

\* \* \*

19. [A.L.C.] has strong, emotional bonds with petitioners Brenda [and] Kent Smith. [A.L.C.] also has very good relationships with interveners Kim [and] Karen Conover. . . .

\* \* \*

22. The Smiths have been flexible in [Father's] parenting time schedule, and the Smiths have made [A.L.C.] available to the Conovers beyond the scheduled times.

23. The Smiths have demonstrated that they will encourage and facilitate [A.L.C.'s] relationship with [Father] and the Conover[s] giving due regard to [A.L.C.'s] safety.

24. [The Smiths, Brad Jones,] and the Conovers agree that Father's parenting time should be supervised at this time.

\* \* \*

30. *The Indiana Parenting Time Guidelines should be considered by this Court* in developing a parenting time schedule for [Father], and *in ordering grandparent visitation.* [Father] should only be allowed supervised parenting time and none at all if he is under the influence of drugs or alcohol.

\* \* \*

**CONCLUSIONS OF LAW**

\* \* \*

12. Until further order of this Court, Father's parenting time should be supervised by Kim and Karen Conover . . . .

13. The Conovers are entitled to visitation pursuant to [Indiana Code Section] 31–17–5–1 [of the Grandparent Visitation Act]. The Court further finds that the Conovers should have the visitation as hereinafter ordered in consideration of the following:

    a. The Conovers have played a major and positive role in [A.L.C.'s] life;

    b. [Father] continues to have legal and substance abuse problems;

c. The Court has attempted to balance [A.L.C.'s] needs given his age and circumstances and the importance of a continuing relationship with [Father] and the Conovers, all as guided by the Indiana Parenting Time Guidelines;

d. The Court directs the co-Guardians [the Smiths] to consider the Conovers as a first option for incidental childcare and to include them as much as reasonable in [A.L.C.'s] significant activities.

Appellants' App. at 11–13, 15, 18–19 (emphases added). And in its Permanent Guardianship Order, the court addressed visitation as follows:

At the evidentiary hearing the Court notified the parties that provisions would be made to ensure grandparents would have scheduled time with the child. The parties raised no objections. Therefore, the Court orders that *the Conovers are entitled to visitation pursuant to the Grandparent's Visitation Act ( [Ind.Code §§ ] 31–17–5–1 et seq.) and the Parenting Time Guidelines* . . . .

a. That [Father] and [the] Conovers shall have concurrent parenting time with the minor child under the following terms and conditions:

b. Until further order of this Court, any and all parenting time by [Father] shall be supervised by either Kim or Karen Conover. [Father] shall not be present for parenting time if he is under the influence of drugs or alcohol.

c. *Pursuant to the Indiana Parenting Time Guidelines,* [Father] and *the Conovers shall have the following parenting time* until the child reaches his third birthday:

i. Alternate weekends on Saturday for ten hours and on Sunday for ten

hours, with the child to be returned at 6:00 p.m. on Sunday;

ii. One "day" each week for three hours, the child to be returned at least one hour before evening bedtime;

iii. All scheduled holidays as set forth and under the terms and conditions of the Indiana Parenting Time Guidelines.

iv. In addition, the Court further orders that the Conovers shall have overnight visitation on [Father's] alternating weekends. Specifically, they shall keep the child overnight on alternating Saturdays until his third birthday;

v. *After [the child's] third birthday* [Father] and *the Conovers shall have visitation pursuant to the Indiana Parenting Time Guidelines for a child three years and older.*[6] [Father's] visitation shall continue to be supervised by the Conovers.

Appellants' App. at 22–23 (emphases added).

The trial court acted within its discretion when it awarded visitation to the Conovers. *See* Ind.Code § 31–17–5–1. But the trial court awarded the Conovers visitation according to the Indiana Parenting Time Guidelines, independent of Father's visitation, when it found that "the Conovers are entitled to visitation pursuant to the Grandparent's Visitation Act ([Ind. Code §§ ] 31–17–5–1 et seq.) and the Parenting Time Guidelines." Appellants' App. at 22. This court has held that the "Grandparent Visitation Act contemplates only 'occasional, temporary visitation' that does not substantially infringe on a parent's fundament right 'to control the upbringing, education, and religious training

of their [sic] children.'" *Hoeing,* 880 N.E.2d at 1221 (quoting *Swartz v. Swartz,* 720 N.E.2d 1219, 1221 (Ind.Ct.App.1999)). Thus, in *Hoeing,* we held that the trial court abused its discretion when it ordered visitation to a grandparent nearly coextensive with the visitation set out in the Indiana Parenting Time Guidelines. *Id.* at 1221.

In *Hoeing* and the other grandparent visitation cases found in our research, the dispute regarding grandparent visitation was between a grandparent and the child's parent. Again, the Act was borne out of balancing the rights of grandparents to participate in the lives of their grandchild and the constitutional rights of parents to raise their child as they see fit. *See McCune,* 783 N.E.2d at 756. But the crux of the Act is to protect the best interest of the child. *See McCune.* 783 N.E.2d at 757 ("By enacting the Grandparent Visitation Act, our General Assembly has recognized that a child's best interest is often served by developing and maintaining contact with his or her grandparents."). And the Act provides the exclusive method for grandparents to seek visitation. *Handshoe v. Ridgway (In re J.E.M.),* 870 N.E.2d 517, 519 (Ind.Ct.App.2007). There is no longer a common law right for grandparents to seek visitation. *Id.* Thus, the Act and the cases explaining the Act apply here.

In the present case, A.L.C. is only three years old. He is under the guardianship of the Smiths, one of three sets of grandparents who wish to be involved in his life. In its Permanent Guardianship Order, the court gave the Conovers visitation equal to that of a non-custodial parent as well as right of first refusal for incidental child

---

**6.** A.L.C. turned three years old on August 27, 2008. Thus, under the Indiana Parenting Time Guidelines, the Order awards the Conovers visitation on alternating weekends from Friday at 6:00 p.m. until Sunday at 6:00 p.m.; one evening per week for up to four hours; and on scheduled holidays. Indiana Parenting Time Guidelines II.B.

care. But, as noted above, an award of visitation to the extent provided in the Parenting Time Guidelines is an abuse of discretion. *Hoeing,* 880 N.E.2d at 1222. The extensive visitation award, when combined with the right of first refusal for incidental child care, could effectively exclude A.L.C.'s third set of grandparents, the Joneses, from having a meaningful amount of time with him. The Permanent Guardianship Order did not consider these factors when setting the visitation schedule for the Conovers. Moreover, the court made no finding that the extensive visitation award to the Conovers is in the best interest of A.L.C. For all of these reasons, we conclude that the trial court abused its discretion when it awarded the Conovers visitation according to the Indiana Parenting Time Guidelines.

■ The failure of a trial court to enter the required findings is "a defect in form, or procedural irregularity, which is capable of being cured." *Ramsey v. Ramsey,* 863 N.E.2d 1232, 1240 (Ind.Ct.App. 2007) (quoting *Mazza v. Merkler (Paternity of P.E.M.),* 818 N.E.2d 32, 37 (Ind.Ct. App.2004)). When a trial court fails to issue specific findings in accordance with *McCune,* the order is voidable, and the remedy on appeal is a remand to the trial court instructing it to enter a proper order containing the required findings. *Id.* Therefore, we reverse the part of the Permanent Guardianship Order setting out the Conovers' visitation schedule and remand to the trial court with instructions to enter more specific findings and conclusions supporting the court's award of visitation to the Conovers in accordance with this opinion. Specifically, the court must consider and make findings on (1) the factors set out in *McCune,* to the extent applicable; (2) the particular circumstances of this child, including but not limited to the fact that there are three sets of grandparents and a noncustodial father involved in his life; and (3) whether the visitation schedule for the Conovers determined on remand is in A.L.C.'s best interest.

## Conclusion

A.L.C.'s mother is deceased, and his father is unavailable to be his primary caretaker due to Father's addiction and recent legal entanglements. Nevertheless, the trial court found that A.L.C. has always been a "thriving, happy, healthy baby." Appellants' App. at 12. A.L.C. is fortunate to have so many adults who are capable and who desire to give him a home and care for him. Unfortunately, the parties do not agree on whose home and care would be best for A.L.C., and this guardianship proceeding resulted.

The Conovers intervened in the guardianship proceedings after the trial court had entered the temporary guardianship orders. As a result, they are bound by those orders and cannot challenge them on appeal. The Conovers also have not shown that the trial court abused its discretion when it did not appoint them as co-guardians over the person or estate of A.L.C. The Conovers' arguments in that regard amount, in part, to a request that we reweigh the evidence. But they failed to show that the trial court's findings were not supported by the evidence or that the court's conclusions were not supported by the findings.

Additionally, the Conovers are not "entitled" to be appointed co-guardians as a matter of law by virtue of Father's Nomination. In light of the Nomination, we conclude that the trial court abused its discretion by finding that Indiana Code Section 29–3–5–5(a)(4) does not apply. But under Indiana Code Section 29–3–5–5, the court was required only to give the Conovers "due regard" in appointing

guardians. The statute does not set out a definitive priority system. More importantly, the overriding consideration in selecting a guardian is the best interest of the incapacitated person or minor, and the Conovers did not show that the trial court's choice of guardians was not in A.L.C.'s best interest.

On the cross-appeal, we conclude that the trial court abused its discretion when it awarded visitation to the Conovers coextensive with that provided by the Indiana Parenting Time Guidelines. *See Hoeing,* 880 N.E.2d at 1222. As a result, we reverse the part of the Permanent Guardianship Order awarding visitation to the Conovers and remand with instructions to enter a new visitation order for the Conovers, in accordance with this opinion, supported by findings and conclusions thereon, without a hearing.

Affirmed in part, reversed in part, and remanded with instructions.

KIRSCH, J., concurs.

BAKER, C.J., concurs in part and dissents in part with separate opinion.

BAKER, Chief Judge, concurring in part and dissenting in part.

I concur with the majority's resolution of the temporary and permanent guardianship issues presented in this case. However, I part ways with the determination that the trial court abused its discretion in awarding the Conovers visitation with A.L.C. that was purportedly in excess of the schedule set forth in the Grandparent Visitation Act.[7]

I acknowledge that a trial court may not order visitation to a grandparent "nearly coextensive with the visitation set out in the Indiana Parenting Time Guidelines." Op. at 358 (citing *Hoeing v. Williams,* 880 N.E.2d 1217, 1221 (Ind.Ct.App.2008)).

7. Ind.Code §§ 31–17–5–1 through –10.

However, as the trial made clear in its guardianship order, Father's parenting time with A.L.C. was to be supervised by his parents, the Conovers. As a result, even though the Conovers' visitation with A.L.C. would be concurrent with Father's parenting time, I cannot agree that the circumstances dictate that the Conovers were erroneously granted visitation time in excess of that which is provided for under the Grandparent Visitation Act. Put another way, it is apparent that the Conovers only received the amount of visitation to which Father was entitled. To conclude that the Conovers were granted an excessive amount of visitation time simply elevates form over substance. Moreover, I cannot agree that the visitation schedule ordered in this case could exclude the Joneses—A.L.C.'s third set of grandparents—from "having a meaningful amount of time with [A.L.C.]." Op. at 359. I would affirm the trial court's judgment in all respects.