## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 11 2018, 8:31 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew C. Maples
Hocker & Associates, LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEES

Pamela G. Grant-Taylor
Law Office of Pamela Grant
Taylor
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Guardianship of: A.E.S. Glen Scisney, *Appellant-Respondent*, v. Saleem Adams and Tamara Adams, *Appellees-Petitioners*. | May 11, 2018 |
| | Court of Appeals Case No. 49A04-1708-GU-1923 |
| | Appeal from the Marion Superior Court |
| | The Honorable Steven R. Eichholtz, Judge |
| | Trial Court Cause No. 49D08-1604-GU-11848 |

**Brown, Judge.**

[1] Glen Scisney appeals the trial court's order naming Saleem and Tamara Adams as the guardians of A.E.S. ("Child"). The trial court issued a similar order naming the Adamses as the guardians of A.S.S. under cause number 49D08-1604-GU-11850 ("Cause No. 850"). A.S.S. is the twin sibling of Child (Child and A.S.S., together, the "Children"). We affirm the court's appointment of the Adamses as the guardians of Child under this cause, and we also issue a memorandum decision today under cause number 49A02-1708-GU-1921 ("Cause No. 1921") affirming the court's appointment of the Adamses as the guardians of A.S.S. in Cause No. 850.

### Facts and Procedural History

[2] Child was born on January 27, 2016, to Kimberly Scisney ("Mother"). Mother was overwhelmed with the idea of parenting the Children and approached the Adamses, who attended the same church as Mother, as potential persons who might adopt the Children. The Children were placed with the Adamses on March 20, 2016, and Mother later signed a power of attorney and health powers of attorney granting attorney-in-fact powers to the Adamses to act on behalf of the Children. A short time later, Mother died as a result of an automobile accident. On April 5, 2016, the Adamses filed a petition requesting that the court appoint them as Child's guardians and stating that Child had been in their care since March 20, 2016, when Mother expressed her desire for Child to live with them, and that both of Child's parents had signed a power of attorney on March 28, 2016. The court appointed a guardian ad litem (the "GAL"), and the GAL filed a report with the court on June 20, 2016. The

court issued an order stating that Scisney is the maternal grandfather of Child and granting temporary guardianship of Child to the Adamses. On August 17, 2016, Scisney filed a motion to contest the appointment of guardianship, and on August 25, 2016, he filed a counter-petition requesting that the court appoint him as the permanent guardian of Child.

[3] On December 5, 2016, the court held a hearing at which it admitted into evidence the GAL's report and other documentary evidence and heard testimony from Scisney, the Adamses, the GAL, and Devante Connor, the putative father of the Children, among others. On June 13, 2017, the court issued an order naming the Adamses as the guardians of Child. Scisney filed a motion to correct error, which the trial court denied. Discussion

[4] The issue is whether the trial court abused its discretion in naming the Adamses as guardians of Child. The trial court is vested with discretion in making determinations as to the guardianship of an incapacitated person or minor. *In re Guardianship of A.L.C.*, 902 N.E.2d 343, 352 (Ind. Ct. App. 2009). This discretion extends to both its findings and its order. *Id*. We apply the abuse of discretion standard to review the trial court's findings and order. *Id*. Because the court set forth findings, we look to those findings to determine whether the court abused its discretion. *See id.* The findings will not be set aside unless clearly erroneous. *Id*. Findings are clearly erroneous when the record lacks any facts or reasonable inferences to support them. *Id*. Further, we will not set aside the judgment unless clearly erroneous. *Id*. A judgment is clearly

erroneous when unsupported by the findings of fact and conclusions thereon. *Id*.

[5] Scisney argues that the trial court's findings are not supported by the evidence, that he is the most suitable person to be named guardian of Child, and that it would be in Child's best interest that he be named guardian. The Adamses maintain that the trial court did not err in naming them as the guardians of Child under Ind. Code § 29-3-5-4, that the GAL's report admitted into evidence contained the power of attorney executed by Mother and Connor, and that Scisney's argument is a request to reweigh the evidence and reassess the credibility of witnesses.

[6] The guardianship statutes provide for the appointment of guardians for minors. *See* Ind. Code § 29-3-5-1. Ind. Code §§ 29-3-5 set forth proceedings for the appointment of a guardian, and Ind. Code § 29-3-5-3 provides that, if it is alleged and the court finds that the individual for whom the guardian is sought is an incapacitated person or a minor, and the appointment of a guardian is necessary as a means of providing care and supervision of the physical person or property of the incapacitated person or minor, the court shall appoint a guardian under the chapter.

[7] At the time of the December 2016 hearing, Ind. Code § 29-3-5-4 provided:

> The court shall appoint as guardian a qualified person or persons most suitable and willing to serve, having due regard to the following:

(1)     Any request made by a person alleged to be an incapacitated person, including designations in a durable power of attorney under IC 30-5-3-4(a).

(2)     Any request contained in a will or other written instrument.

(3)     A designation of a standby guardian under IC 29-3-3-7.

(4)     Any request made by a minor who is at least fourteen (14) years of age.

(5)     Any request made by the spouse of the alleged incapacitated person.

(6)     The relationship of the proposed guardian to the individual for whom guardianship is sought.

(7)     Any person acting for the incapacitated person under a durable power of attorney.

(8)     The best interest of the incapacitated person or minor and the property of the incapacitated person or minor.

(Subsequently amended by Pub. L. No. 194-2017, § 7 (eff. Jul. 1, 2017)).[1]

[8]     Ind. Code § 29-3-5-5 provided:

---

[1] The 2017 amendment inserted a new subsection (2) and redesignated former subsections (2) to (8) as subsections (3) to (9).  The new subsection (2) provides: "(2) Any request made for a minor by: (A) a parent of the minor; or (B) a de facto custodian of the minor, including a designation in a power of attorney under IC 30-5-3-4(b) or IC 30-5-3-4(c)."

(a) The following are entitled to consideration for appointment as a guardian under section 4 of this chapter in the order listed:

(1) A person designated in a durable power of attorney.

(2) A person designated as a standby guardian under IC 29-3-3-7.

(3) The spouse of an incapacitated person.

(4) An adult child of an incapacitated person.

(5) A parent of an incapacitated person, or a person nominated by will of a deceased parent of an incapacitated person or by any writing signed by a parent of an incapacitated person and attested to by at least two (2) witnesses.

(6) Any person related to an incapacitated person by blood or marriage with whom the incapacitated person has resided for more than six (6) months before the filing of the petition.

(7) A person nominated by the incapacitated person who is caring for or paying for the care of the incapacitated person.

(b) With respect to persons having equal priority, the court shall select the person it considers best qualified to serve as guardian. The court, acting in the best interest of the incapacitated person or minor, may pass over a person having priority and appoint a person having a lower priority or no priority under this section.

(Subsequently amended by Pub. L. No. 194-2017, § 8 (eff. Jul. 1, 2017)).

[9] Pursuant to Ind. Code § 29-3-5-4, the court must give due regard to the best interest of a minor and, acting in the best interest of the minor, may pass over a person having priority and appoint a person having a lower priority or no priority under Ind. Code § 29-3-5-5. *In re Guardianship of A.L.C.*, 902 N.E.2d at 353. The key consideration, in essence, in selecting a guardian for Child is whether the choice of guardian is in Child's best interest. *See id*.

[10] As we observe in our memorandum decision in Cause No. 1921, to the extent Scisney contests the trial court's findings in paragraphs 7, 8, 14 and 18 of its June 13, 2017 order, we observe that Tamara testified that the Children had come into her care and custody on March 20, 2016, and that Mother had contacted her and Saleem shortly after the Children were born. The GAL's report indicated that Mother was overwhelmed with the idea of single parenthood prior to the birth of the Children, that she attended the same church as the Adamses, and that she had approached the Adamses as potential persons who might adopt the Children. The GAL's report stated that "the Adams[es] requested that they be given power of attorney for the children and health power of attorney" and "[t]hey received and kept the executed documents (which were also signed by the putative father, despite his legal claim as a father/parent being tenuous, if not nonexistent), and the GAL reviewed these during the home visit." Guardian Ad Litem Exhibit I at 5. The GAL's report included attached executed documents including a power of attorney and

health powers of attorney dated in March 2016 and signed by Mother which granted attorney-in-fact powers to the Adamses to act on behalf of Child.[2]

[11] The court heard testimony regarding when the Children were placed in the care of the Adamses and the employment of the Adamses. According to the GAL's report, Roberta Edwards, the Children's maternal grandmother, stated that she was of the opinion that Scisney had been verbally abusive to Mother, she had observed Mother crying and upset after speaking with Scisney on the phone a few times, and Mother had unequivocally expressed a desire for the Adamses to have and hopefully adopt the Children. Crista Spiller, Mother's cousin, reported that Mother "had stated to her that [Scisney] was the very last person on earth that she would want to have her children" and that Scisney "had told [Mother] he would disown her if she ever got pregnant, and that he did in fact do so when he found out." *Id.* at 10. Scisney reported that he had counseled his daughter not to become pregnant out of wedlock and having such "bastards" would be wrong and greatly disappoint him, that Mother would become upset at this fatherly advice, and that in no way was the interaction ever abusive or less than fatherly or loving. *Id.* at 12. The report indicated that it was widely acknowledged that Mother desired that the Children be placed with the Adamses. We cannot say that the record lacks any facts or reasonable

---

[2] The Power of Attorney for Child instrument was also signed by Connor.

inferences to support the court's findings in paragraphs 7, 8, 14 and 18 of its order.

[12] In addition, as we observe in our memorandum decision in Cause No. 1921, the record reveals that the court admitted evidence and testimony related to the suitability of the Adamses and Scisney as guardians and the considerations set forth in Ind. Code §§ 29-3-5-4 and -5. The court admitted evidence regarding the parties' financial resources, their employment and earnings, the Adamses' care of the Children, the health histories of the Children, the history and stability of the parties' housing, the fact the Adamses obtained money from Go Fund Me funds established to solicit donations for the Children and Mother, the reports regarding Mother's relationship with Scisney and her desire for the Children to be placed with the Adamses, and the Power of Attorney for Child executed by Mother and Connor in favor of the Adamses with respect to the care of Child. The court was able to consider the evidence, including the evidence of the parties' resources and Mother's wishes, in exercising its discretion in determining the most suitable persons to be appointed as guardians of Child. Scisney has not shown that the court's findings are not supported by the record or that its judgment is not supported by its findings.

[13] Based upon the evidence and testimony presented at the December 5, 2016 hearing, we are unable to conclude that the trial court abused its discretion in appointing the Adamses as guardians of Child.

## *Conclusion*

[14] For the foregoing reasons, we affirm the order of the trial court naming the Adamses as guardians of Child.

[15] Affirmed.

Bailey, J., and Crone, J., concur.