### In re the GUARDIANSHIP OF V.S.D.

**V.S.D., Appellant,**

v.

**Fayanne L. WILLIAMS-HUSTON, Appellee.**

No. 71A03–9503–CV–88.

Court of Appeals of Indiana.

Jan. 30, 1996.

J. David Keckley, South Bend, for appellant.

Fred R. Hains, South Bend, for appellee.

## OPINION

STATON, Judge.

V.S.D. appeals the judgment of the trial court in this guardianship proceeding instituted by her mother, Fayanne Williams–Huston ("Williams–Huston"). V.S.D. raises four issues for our review, which we consolidate and restate as follows:

I. Whether the trial court erred in granting Williams–Huston's guardianship petition.

II. Whether the trial court erred in authorizing Williams–Huston to consent to a tubal ligation for V.S.D.

We affirm.[1]

The facts most favorable to the judgment reveal that V.S.D. is an adult woman who suffers from chronic schizo-affective disorder.

---

1. In her brief, V.S.D. also raises the issue of whether the trial court erred by failing to limit the scope of Williams–Huston's authority as her guardian. V.S.D. failed to present either cogent argument or citation to authority on this issue; in fact, she omitted any reference to this issue in her argument. Appellate review is thereby waived. *See* Ind.Appellate Rule 8.3(A)(7); *Garrod v. Garrod* (1992), Ind.App., 590 N.E.2d 163, 172, *reh. denied.*

In September of 1993, the St. Joseph Superior Court ordered that she be involuntarily committed to a mental health facility. While in a residential placement facility in the summer of 1994, V.S.D. became pregnant. Thereafter, Williams–Huston instituted guardianship proceedings pursuant to IND. CODE § 29–3–1–7.5 (1993). In her guardianship petition, Williams–Huston moved that V.S.D.'s pregnancy be terminated, or alternatively, that Williams–Huston be authorized to consent to a tubal ligation on V.S.D.'s behalf.

After a hearing, the trial court granted Williams–Huston's petition for guardianship. In the same order, the trial court denied her motion for termination of V.S.D.'s pregnancy, and granted her motion allowing her to consent to a tubal ligation for V.S.D. It is from this order that V.S.D. appeals.

 All findings and orders of the trial court in guardianship proceedings are within its discretion. IND.CODE § 29–3–2–4 (1993). Thus, we will review those findings under an abuse of discretion standard. We will find an abuse of discretion only when the decision of the trial court is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *McCullough v. Archbold Ladder Co.* (1993), Ind., 605 N.E.2d 175, 180.

## I.

### *Guardianship*

The trial court appointed Williams–Huston as V.S.D.'s guardian pursuant to IND.CODE § 29–3–5–2(a), which provides:

Except under subsection (c),[2] if it is alleged and the court finds that:

(1) the individual for whom the guardian is sought is an incapacitated person or a minor; and

(2) the appointment of a guardian is necessary as a means of providing care and supervision of the physical person or property of the incapacitated person or minor;

the court shall appoint a guardian under this chapter. IC 29–3–5–2(a). Specifically, the trial court found that V.S.D. is incapacitated and unable to provide self-care, thereby warranting the appointment of a guardian.

V.S.D. challenges the trial court's finding that she is incapacitated. An incapacitated person is defined by statute as an individual who is unable:

(A) to manage in whole or in part the individual's property;

(B) to provide self-care; or

(C) both;

because of insanity, mental illness, mental deficiency, physical illness, infirmity, habitual drunkenness, excessive use of drugs, incarceration, confinement, detention, duress, fraud, undue influence of others on the individual, or other incapacity. . . .

IC 29–3–1–7.5(2). V.S.D. does not dispute that she has a mental illness. However, she argues that this definition was not met because the evidence did not support the finding that her mental illness precluded her from providing adequate self-care. We disagree.

 The evidence reveals that V.S.D. has been subject to an involuntary commitment order since September of 1993. Despite her continued supervision by a mental health facility since that time, V.S.D. has failed to either provide or obtain proper self-care. She has been subject to emergency hospitalization on at least five separate occasions. Several health care professionals who treated her testified that on numerous occasions, she has ignored medical advice, refused to take her medication and refused to eat for extended periods. She experiences delusions, hallucinations, paranoia, and is occasionally violent and combative. She has exhibited sexually inappropriate behavior to the extent that she contracted a sexually transmitted disease,

---

**2.** Subsection (c) provides:

If the court finds that it is not in the best interests of the incapacitated person or minor to appoint a guardian, the court may:

(1) treat the petition as one for a protective order and proceed accordingly;

(2) enter any other appropriate order; or

(3) dismiss the proceedings.

IND.CODE § 29–3–5–3(c) (1993).

and she became pregnant by a fellow resident of the mental health facility. Moreover, V.S.D. neglected to obtain adequate prenatal care during the first trimester of her pregnancy.

This is ample evidence from which the trial court could find that V.S.D.'s mental illness renders her unable to provide adequate self-care, thereby warranting appointment of a guardian. Accordingly, the appointment of Williams–Huston as V.S.D.'s guardian was a proper exercise of the trial court's discretion.

## II.

### *Tubal Ligation*

V.S.D. next argues that the trial court erred in determining that Williams–Huston could consent to a tubal ligation on V.S.D.'s behalf. We note initially that V.S.D. waived this issue, because she failed to include citation to authority in support of her argument. App.R. 8.3(A)(7); *Garrod, supra.* Notwithstanding waiver, we will address the merits of V.S.D.'s argument.

■ Indiana law provides that "the guardian (other than a temporary guardian) of an incapacitated person has all of the powers to perform the guardian's responsibilities, including the powers with respect to the incapacitated person ... that are granted to the guardian of a minor...." IND.CODE § 29–3–8–2(b). Included therein is "the power to consent to medical or other professional care and treatment for the [incapacitated person's] health and welfare." IND.CODE 29–

3–8–2(a)(4). In addition, IND.CODE § 16–36–1–5(a)(1) (1993) authorizes a judicially appointed guardian to consent to health care[3] on behalf of an incapable party.

■ These provisions authorize a guardian to consent to the performance of a tubal ligation on an incapacitated woman. However, because this issue concerns V.S.D.'s fundamental right to procreate, a higher level of scrutiny is required.[4] *See State v. Alcorn* (1994), Ind., 638 N.E.2d 1242, 1244–1245, *reh. denied.* A guardian may exercise this authority when the guardian files the petition in good faith, and presents clear and convincing evidence that the procedure is in the best interest of the incapacitated person's health and welfare. *Lulos v. State* (1990), Ind.App., 548 N.E.2d 173, 174, (citing *P.S. by Harbin v. W.S.* (1983), Ind., 452 N.E.2d 969, 976, *reh. denied* ).

■ We must now examine whether the trial court's order in this case is supported by clear and convincing evidence. V.S.D. makes no argument that Williams–Huston brought the petition in bad faith. The evidence clearly established that V.S.D. had a long history of suffering from a mental illness that severely impairs her judgment, including her judgment about sexual behavior and the use of contraception. Both of V.S.D.'s parents indicated that a tubal ligation is in the best interests of V.S.D.'s health and welfare. Further, V.S.D.'s treating physicians testified that pregnancy precludes her from taking the medication that controls her condition, and that without her medication, V.S.D.'s symptoms become significantly

---

**3.** As used in IC 16–36–1–5, health care means "any care, treatment, service, or procedure to maintain, diagnose, or treat an individual's physical or mental condition." IND.CODE § 16–36–1–1 (1993).

**4.** As Judge Sullivan noted in *P.S. by Harbin v. W.S.* (1982), Ind.App., 443 N.E.2d 67, 69–71, *reh. denied, vacated on jurisdictional grounds,* Ind., 452 N.E.2d 969, procreation is a long-recognized fundamental right:

The right to procreate is 'fundamental to the very existence and survival of the race.' *Skinner v. Oklahoma* (1942), 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655. This right is a 'basic liberty' of which the individual is 'forever deprived' through involuntary sterilization. *Id.* The United States Supreme Court has identified the right to choose whether to

bear a child as subsumed within the general right to personal privacy. *Carey v. Population Services International* (1977), 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675; *Roe v. Wade* (1973), 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147. 'No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraints or interference of others....' *Terry v. Ohio* (1968), 392 U.S. 1, 9, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889 (quoting *Union Pacific Railway Co. v. Botsford* (1891), 141 U.S. 250, 251, 11 S.Ct. 1000, 1001, 35 L.E. 734). *Id.* at 72. For this reason, it should not be infringed upon without reservation. *Id.* at 69–70.

worse. V.S.D. was subject to emergency detention in hospitals no less than five times in the approximately fourteen month period prior to the hearing in this case. Finally, when V.S.D. was properly medicated, she stated that she did not wish to become pregnant.

Based on the totality of this evidence, we conclude that Williams–Huston established by clear and convincing evidence that tubal ligation is in the best interests of V.S.D.'s health and welfare. Accordingly, the trial court's order authorizing Williams–Huston to consent to this procedure for V.S.D. was within its discretion.

Affirmed.

HOFFMAN and RILEY, JJ., concur.