Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Mar 11 2013, 10:02 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JOHN P. BRINSON**
Evansville, Indiana

ATTORNEYS FOR APPELLEES:

**KELLY A. LONNBERG**
**TRISHA S. DUDLO**
Bamberger, Foreman, Oswald and Hahn, LLP
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN RE THE GUARDIANSHIP OF J.M.: | ) |
| | ) |
| CHRISTINA M. MARTIN (KIBALKO), | ) |
| | ) |
| Appellant-Petitioner, | ) |
| | ) |
| vs. | ) No. 82A04-1205-GU-272 |
| | ) |
| WILLIAM P. HITCH and GEORGIA L. HITCH, | ) |
| | ) |
| Appellees-Respondents. | ) |

APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable Brett J. Niemeier, Judge
The Honorable Renee A. Ferguson, Magistrate
Cause No. 82D07-0511-GU-190

**March 11, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Christina M. Martin n/k/a Christina M. Kibalko ("Mother") appeals the trial court's denial of her petition to terminate William and Georgia Hitch's ("the Guardians") guardianship over Mother's biological son, J.M. On appeal, Mother contends that the trial court clearly erred when it denied her petition to terminate the guardianship and further that the trial court abused its discretion when it ordered her to reimburse the Guardians for $1000 paid to the guardian ad litem ("the GAL"). Concluding that the trial court's order denying Mother's petition is not clearly erroneous but finding an abuse of discretion regarding the court's order for Mother to reimburse the Guardians for the GAL fee, we affirm in part, reverse in part, and remand.

**Facts and Procedural History**

The facts most favorable to the trial court's judgment indicate that Mother had a very tumultuous childhood which included time spent in foster care due to her parents' instability. Mother moved out on her own at age seventeen and became pregnant at the age of eighteen. J.M. was born on October 17, 2003. Mother met the Guardians at St. Matthew's Church in Evansville shortly before J.M. was born. After J.M.'s birth, the Guardians offered assistance to Mother as childcare providers. When J.M. was six months old, he began staying overnight with the Guardians once or twice per week. Soon thereafter, he began spending three or four overnights per week at the Guardian's home. The Guardians often helped Mother financially. At one point, Mother resided in the Guardians' home for three or four months. Even when Mother was living in the home, the Guardians provided the exclusive care for

J.M. The Guardians also took J.M. on trips with them. Mother gave the Guardians her power of attorney and signed an authorization for the Guardians to become health care representatives for J.M.

On November 4, 2005, the Guardians filed a petition to establish a guardianship over J.M., who was just shy of two years old at the time. On that same date, Mother filed her consent to the guardianship. The trial court appointed a GAL to represent J.M.'s interests. The GAL tendered a report approving the establishment of the guardianship. In the report, the GAL noted that Mother "is seeking a military career and unable to care for [J.M.] at this time." Appellant's App. at 27. The report also noted that J.M. needed a stable and nurturing environment and that the Guardians were willing and able to continue to provide that environment for him. The GAL recommended that Mother "show that she is able to provide a stable residence and employment for six months prior to regaining custody." *Id*. at 28. During an evidentiary hearing held on the petition to establish guardianship, Mother testified, "I'm doing this to better myself, and I'm trying to join the Military, and that I want this to be a temporary thing until I'm, you know, a little more established." *Id*. at 142. Mother volunteered to pay thirty dollars per week toward J.M.'s care when and if she was able to obtain full-time work or if she was able to join the military. The trial court entered a detailed order granting the guardianship on December 7, 2005. The trial court's order granting the guardianship gave no specific reason for the establishment of the guardianship other than Mother's consent and that it was in the best interests of J.M.

Mother enlisted in the Indiana Army National Guard on January 3, 2006. She left for basic training in March 2006 and returned in October 2006. She resided in Evansville following her training but continued to drill with the National Guard one weekend per month and two or three weeks during the summer. During this time, Mother spent approximately four or five days per month with J.M. She would either meet with J.M. during lunch or would spend a two-day weekend with him. Mother made no attempt to take care of J.M. full-time during the year and one half that she resided in Evansville after her basic training.

Mother was placed on active duty on April 15, 2008, and, in July 2008, Mother deployed to Iraq. She returned to the United States in November or December 2008. Since her return, Mother has seen J.M. no more than every other weekend. Also since her return, Mother has shown significant instability in her employment. Mother got married in October 2009 to a Russian immigrant whom she met online. Mother moved with her husband to Nashville, Tennessee on May 1, 2010. Mother gave birth to her second child on July 2, 2010.

Since her return from Iraq, Mother has been involved in veteran's counseling at times and has been diagnosed with, among other things, cannabis dependence disorder, anxiety disorder, depressive disorder, and borderline personality disorder. On the other hand, J.M. has, by all accounts, been thriving in the Guardians' care. He refers to the Guardians as "Mom" and "Dad." Tr. at 230. J.M. was recently diagnosed with attention deficit disorder and Asperger's syndrome, a classified disorder on the autism spectrum. J.M.'s diagnosis makes him less easily adaptable to change and makes him more challenging to raise than an

4

average child of the same age. Although he has had a history of behavior problems, he has been doing well with the help of medication and therapy.

Mother filed a petition to terminate the guardianship on February 18, 2011. The trial court again appointed a GAL to represent J.M.'s interests. During the pendency of the petition to terminate, Mother was granted supervised visitation with J.M. Mother has been late for many of her supervised visits with J.M. and has left many visits early. Out of approximately eighteen supervised visits with J.M., Mother's husband has only attended one lunch visit with J.M. Mother has reported to counselors that her husband has not bonded with J.M. and that he does not wish for J.M. to live with him. Additionally, Mother's husband is currently seeking new employment in Texas and Florida.

On April 8, 2011, Mother filed a motion for summary judgment. The Guardians filed their response in opposition to summary judgment, and an evidentiary hearing was held on May 20, 2011. The trial court denied Mother's motion for summary judgment on that date. Thereafter, on August 12 and October 28, 2011, and January 17, 2012, the trial court conducted evidentiary hearings on Mother's petition to terminate guardianship. As of January 17, 2012, Mother was $1889.64 behind in her child support obligation. On March 26, 2012, the trial court entered its findings of fact, conclusions thereon, and order denying the petition to terminate. The trial court also ordered Mother to reimburse the Guardians $1000 for the payment of GAL fees. Mother filed a motion to correct error which was denied by the trial court on April 30, 2012. This appeal followed.

**Discussion and Decision**

*I. Petition to Terminate Guardianship*

Mother appeals the trial court's denial of her petition to terminate guardianship. At Mother's request, the trial court entered findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52.[1] Our standard of review in this regard is well settled. We employ a two-tiered standard of review; we first determine whether the evidence supports the findings, and then consider whether the findings support the judgment. *In re Guardianship of L.L.*, 745 N.E.2d 222, 227 (Ind. Ct. App. 2001), *trans. denied*. The trial court's findings and judgment will not be set aside unless they are clearly erroneous. *Id*. A judgment is clearly erroneous when it is unsupported by the conclusions drawn, and conclusions are clearly erroneous when they are not supported by findings of fact. *Id*. A judgment is also clearly erroneous when the trial court has applied the wrong legal standard to properly found facts. *Menard, Inc. v. Dage-MTI, Inc.*, 726 N.E.2d 1206, 1210 (Ind. 2000). In reviewing the order being appealed, we will neither reweigh the evidence nor assess witness credibility. *In re M.B. and P.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. Rather, we will consider only the evidence that supports the trial court's judgment together with all reasonable inferences to be drawn therefrom. *Id*.

---

[1] Mother implies that the trial court's findings of fact and conclusions thereon are less credible because they were adopted almost verbatim from the Guardians' proposed findings and conclusions. A court's findings of fact and conclusions thereon are not weakened merely because they were adopted verbatim. *Ind. Tri-City Plaza Bowl, Inc. v. Glueck's Estate*, 422 N.E.2d 670, 674 (Ind. Ct. App. 1981). The trial court is responsible for their correctness and, contrary to Mother's implication, wholesale adoption of one party's proposed findings is not prohibited, uncommon, or improper. *See Hardebeck v. Hardebeck*, 917 N.E.2d 694, 699 (Ind. Ct. App. 2009).

### A. *Automatic Termination*

Mother first argues that the trial court clearly erred when it refused to automatically terminate the guardianship pursuant to Indiana Code Section 31-17-2-21.3, which provides:[2]

> (a) A court may not consider a parent's absence or relocation due to active duty service as a factor in determining custody or permanently modifying a child custody order.
>
> (b) If a court temporarily modifies a custody order due to a parent's active duty service, the order temporarily modifying the custody order terminates automatically not later than ten (10) days after the date the parent notifies the temporary custodian in writing that the parent has returned from active duty service. This subsection does not prevent a court from modifying a child custody order as provided under this article after a parent returns from active duty service.

"Active duty" means full-time service in the armed forces of the United States (as defined in Indiana Code Section 5-9-4-3) or the National Guard (as defined in Indiana Code Section 5-9-4-3) for a period that exceeds thirty consecutive days in a calendar year. Ind. Code § 31-9-2-0.8; *In re Paternity of C.S.*, 964 N.E.2d 879, 884 n.3 (Ind. Ct. App. 2012), *trans. denied*. Indiana Code Section 5-9-4-3 provides that "armed forces of the United States" means the "active or reserve components" of the army and other listed military organizations. Indiana Code Section 5-9-4-4 provides that "national guard" means the Indiana Army National Guard or the Indiana Air National Guard.

---

[2] In its final judgment, the trial court referenced only the inapplicability of the automatic termination provision of Indiana Code Section 31-14-13-6.3 rather than the inapplicability of an identical automatic termination provision in Indiana Code Section 31-17-2-21.3. We believe that Article 17 regarding modification of child custody orders is more applicable than Article 14 regarding modification of child custody following establishment of paternity. Accordingly, we refer to only that article.

Contrary to Mother's argument, the original petition for guardianship here was not granted "due to [Mother's] active duty service." *See* Ind. Code § 31-17-2-21.3. Although Mother may have been contemplating military service at the time she consented to the guardianship as noted in the GAL report, she had not enlisted with the Indiana Army National Guard on the date the guardianship was established. Moreover, Mother's consent to the guardianship does not mention active duty service, and nowhere in the order granting the guardianship did the trial court reference active duty service as the reason for establishment of the guardianship.

In denying Mother's motion for summary judgment, the trial court specifically concluded as follows:

> The statute is very clear to use the language "active duty service", and it uses that phrase throughout the statute. And this Court finds that this guardianship was not done in anticipation of active duty service where we have an active duty military member who had orders to deploy, as many times throughout our involvement overseas this Court has seen. This was a parent who stated the wish to improve [her] position in life by applying to the military, hopefully getting into the military. The mother had not been admitted to military service at this point…I don't find that the guardianship was per se based upon that service. And as I've stated before, the statute is very clear that this is anticipation of someone being deployed on active duty, and that was not Mother's situation when the guardianship was granted. She was not active duty, she was not being deployed, and so therefore that moots any triggering of any termination after ten days that she returned.

Appellant's App. at 21-22. The trial court similarly noted in its final judgment that the statutory automatic termination provision of a temporary custody order entered due to a parent's active duty service was not applicable under the facts presented here. The court found the present case more akin to a "dispute between a parent and a non-parent over the

parent's ability to care for the child" and not a situation "where an otherwise fit parent temporarily transfers custody due to military deployment. [Mother's] five[-]year acquiescence to the Guardians is not a short term transfer during deployment." *Id*. at 16.

The evidence supports the trial court's finding that Mother was not on active duty service at the time the guardianship was granted.[3] Accordingly, Mother is not entitled to the automatic termination of guardianship provided by Indiana Code Section 31-17-2-21.3.

### B. Clear and Convincing Evidence

Indiana Code Section 29-3-12-1(c)(4) provides that a trial court may terminate any guardianship whenever the guardianship is no longer necessary. As with all changes of child custody, the party seeking a change of custody must persuade the trial court that (1) modification is in the best interests of the child; and (2) there is a substantial change in one or more factors the court may consider. *In re K.I.*, 903 N.E.2d 453, 460 (Ind. 2009) (citing Ind. Code § 31-14-13-6). However, it is well settled that these are modest requirements when the party seeking to modify custody is the natural parent of a child who is in the custody of a third party. *Id*. The natural parent "comes to the table with 'a strong presumption that a child's interests are best served by placement with the natural parent.'" *Id*. (quoting *In re Guardianship of B.H.*, 770 N.E.2d 283, 287 (Ind. 2002)). Hence, the first statutory requirement is met from the outset and, as a practical matter, showing a substantial change in

---

[3] Mother makes much of the trial court's use of the word "deployment." Although we agree with Mother that actual deployment is not required pursuant to the statute, the language clearly states that the guardianship must be established due to active duty service. The evidence is undisputed that Mother was not on active duty service at the time the guardianship was established.

9

one or more of the factors the court may consider "is no burden at all" or at the very least "minimal." *Id.*

Once the natural parent meets this minimal burden, the third party must prove by clear and convincing evidence "that the child's best interests are substantially and significantly served by placement with another person." *Id.* (quoting *B.H.*, 770 N.E.2d at 287). This prong can be satisfied by proving, by clear and convincing evidence, unfitness on the part of the parent, long acquiescence in the third party's custody, or voluntary relinquishment such that the affections of the child and the third party have become so interwoven that to sever them would seriously mar and endanger the future happiness of the child. *B.H.*, 770 N.E.2d at 286. The trial court, however, is not limited to these three considerations when determining whether the presumption in favor of the natural parent has been overcome. *K.I.*, 903 N.E.2d at 459. If the third party carries the clear and convincing burden, then custody remains in the third party. *Id.* at 461.[4] We review the trial court's determination regarding custody modifications for an abuse of discretion with a preference for giving latitude and deference to our trial judges in family law matters. *Id.* at 457.

The parties here appear to concede that Mother met her minimal burden and, thus, we turn to the Guardians' clear and convincing burden. We begin by noting the original reasons for J.M.'s placement with the Guardians. The evidence indicates that Mother had a history of

---

[4] The *K.I.* court specifically rejected a "burden-shifting regime" that would place the third party and the parent on a level playing field, noting that "Indiana courts have long held that '[e]ven when a parent initiates an action to reobtain custody of a child that has been in the custody of another, the burden of proof does not shift to the parent…[r]ather, the burden of proof is always on the third party.'" *Id.* (quoting *In re Guardianship of J.K.*, 862 N.E.2d 686, 692 (Ind. Ct. App. 2007) (citations omitted)).

financial, housing, employment, and emotional instability. At the time the guardianship was established, Mother desired to transfer her parental responsibilities – financial, emotional, and physical – to the Guardians. Long before the guardianship was established, the Guardians provided almost the exclusive financial, emotional, and physical care for J.M. Although there is evidence to indicate that Mother has currently grown more stable in some areas of her life, other areas of her life, including her emotional and mental health, have grown less stable and raise serious and legitimate concerns regarding her fitness to parent J.M. More importantly, in determining the best interests of the child, we look beyond whether the original grounds for granting the guardianship still exist. *See Roydes v. Cappy*, 762 N.E.2d 1268, 1274 (Ind. Ct. App. 2002).

We agree with the trial court that the Guardians have provided ample evidence that Mother has long acquiesced in their custody of J.M. and has voluntary relinquished the lion's share of her parental responsibilities such that the affections of J.M. and the Guardians have become so interwoven that to sever them would seriously mar and endanger the future happiness of J.M. Aside from Mother's very brief military deployment, Mother has been available to be actively involved in J.M.'s life. Nevertheless, the record indicates that, for more than five years, she has failed to contribute significantly to the emotional, financial,[5] or physical well-being of J.M. Mother failed to significantly involve herself in J.M.'s life while she lived in Evansville. Now, she has voluntarily moved to Tennessee with her husband and,

---

[5] At the time of the final hearing, Mother was $1889.64 in arrears from her modest $30-per-week child support payments.

11

as a result, her ability to spend time with and to emotionally bond with J.M. has diminished even more so. Mother has been inconsistent in maintaining a visitation schedule with J.M., arriving late for scheduled parenting time or leaving early from such parenting time. Moreover, there is troubling evidence in the record to indicate that, despite his serious diagnosis, Mother does not believe that J.M. has Asperger's syndrome. Mother has not sought to learn about J.M.'s diagnosis or to be involved in his treatment for that disorder.

The long acquiescence of J.M. in the Guardians' custody has cultivated a strong bond and deep mutual affection between J.M. and the Guardians. J.M. refers to the Guardians as "Mom" and "Dad." Tr. at 230. J.M. has become accustomed to the stable and predictable environment that, as indicated by specialists, a child diagnosed with Asperger's syndrome requires. It is clear from the evidence that, at this time, Mother has neither the ability nor the inclination to provide for J.M.'s specialized care or needs. The record supports the trial court's conclusion that J.M.'s best interests are substantially and significantly served by his current placement with the Guardians.[6] Despite Mother's urging, this Court is prohibited from reweighing the evidence. *See B.H..*, 770 N.E.2d at 288. The trial court's decision to deny the petition to terminate guardianship was not clearly erroneous.

## II. GAL fees

Next, Mother challenges the trial court's order that she reimburse the Guardians $1000 for GAL fees. Indiana Code Section 29-3-2-3(a) provides that "the court shall appoint a

---

[6] Because we conclude that the Guardians have met their burden to prove by clear and convincing evidence that J.M.'s best interests are substantially and significantly served by placement with them, we need not address their arguments regarding their "de facto custodian" status or J.M.'s best interests in that context.

12

guardian ad litem to represent the interests of the alleged incapacitated person or minor if the court determines that the alleged incapacitated person or minor is not represented or is not adequately represented by counsel." We have held that in cases where the appointment of a guardian ad litem is within the court's power, the court may also order payment of the guardian ad litem's fees. *Danner v. Danner*, 573 N.E.2d 934, 938 (Ind. Ct. App. 1991), *clarified on reh'g*, *trans. denied* (2002). All findings and orders of the trial court in guardianship proceedings are reviewed for an abuse of discretion. *In re Guardianship of V.S.D.*, 660 N.E.2d 1064, 1066 (Ind. Ct. App. 1996). We will find an abuse of discretion only when the decision of the trial court is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id*.

Neither party here disputes the trial court's appointment of the GAL or the court's power to order the parties to pay GAL fees in this guardianship proceeding. Instead, the parties disagree as to how the trial court apportioned the fees. The record indicates that, at the time of the final hearing, the Guardians had paid approximately $1000 toward GAL fees and that Mother had paid $800 toward GAL fees. During the hearing, the Guardians complained to the court that they had paid too much toward the GAL fees and also that they did not think the GAL should be entitled to any additional fees.[7] In addition to denying Mother's petition to terminate the guardianship, the trial court ordered that Mother reimburse the Guardians $1000 for the GAL fees.

---

[7] Although additional GAL fees remained outstanding at the time of the hearing, the trial court concluded that the GAL had been fully and appropriately compensated and is entitled to no additional payment. We do not disturb that ruling.

13

The Guardians concede that it is common for the parties to "equally divide" the GAL fees. Appellees' Br. at 32. The Guardians state that the trial court's order for Mother to reimburse them "merely equalizes" the cost of the GAL fees. *Id*. However, the trial court's order here does not equalize the payment of the GAL fees as requested by the Guardians. Instead, the trial court's order results in Mother paying 100% of the fees.

While it would be within the trial court's discretion to order one party to pay all of the GAL fees, there is no evidence in the record to support the trial court's decision to apportion all of the fees to Mother in this case. It appears that the trial court may have inadvertently apportioned all of the GAL fees to Mother rather than dividing those fees equally between the parties as requested and contemplated by the Guardians. Accordingly, we conclude that the trial court abused its discretion when it ordered Mother to reimburse the Guardians $1000 for GAL fees. We reverse that order and remand to the trial court with instructions for the trial court to divide the GAL fees equally.

Affirmed in part, reversed in part, and remanded.

MATHIAS, J., and KIRSCH, J., concur.