## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Apr 17 2015, 10:00 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Frederick A. Turner
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re:

The Guardianship of Sharon Izzo,

*Appellant*

April 17, 2015

Court of Appeals Cause No. 53A05-1407-GU-320

Appeal from the Monroe Circuit Court

The Honorable Stephen R. Galvin, Judge

Cause No. 53C07-1402-GU-12

**Bradford, Judge.**

# Case Summary[1]

In the spring and summer of 2013, Indiana Adult Protective Services ("APS") received calls concerning seventy-seven-year-old Appellant Sharon Izzo, calls expressing doubt that Izzo was able to make appropriate health care and financial decisions. In February of 2014, APS petitioned for the appointment of a guardian over Izzo's person and estate. After a first hearing, the trial court appointed a guardian ad litem ("GAL") and temporary guardian. Following a second hearing, the trial court found that Izzo suffered from cognitive problems and mental illness and that she was not capable of making appropriate personal and financial decisions. The trial court appointed a guardian for Izzo's person and estate. On appeal, Izzo contends that APS introduced insufficient evidence to sustain the trial court's judgment. We affirm.

# Facts and Procedural History

In May and June of 2013, APS received calls regarding Izzo and expressing doubts that she could make appropriate health care and financial decisions. On June 25, 2013, Physician's Assistant Vanessa Beard examined Izzo and later opined that Izzo was incapacitated at the time and that "[d]ue to cognitive problems and mental illness she [was] not able to care for herself without

---

[1] Oral argument was held in this case on March 26, 2015, at Ivy Tech Community College in Lafayette, Indiana. We would like to thank the faculty, staff, and students of Ivy Tech for their hospitality and counsel for the high quality of their arguments.

assistance." Ex. 1. The report was signed by neurologist Dr. Jamie Bales. On July 8, 2013, APS opened an official investigation into Izzo's situation.

[3] On December 10, 2013, Dr. Jameson Way examined Izzo and later submitted a report, in which he found Izzo incapacitated and diagnosed her with schizoaffective disorder and frontal lobe dysfunction. On February 10, 2014, APS filed a "verified petition for appointment of guardian over person and estate of incapacitated person" regarding Izzo. Appellant's App. pp. 6-8. On March 11, 2014, the trial court held a hearing, after which it appointed Terri Francis as GAL and Elizabeth Ruh as temporary guardian for Izzo. On April 14, 2014, Dr. Way issued another report, in which he stated that he had examined Izzo again, still found her to be incompetent, and noted her history of schizoaffective disorder, neuropathy, COPD, depression, and urinary incontinence.

[4] On April 21, 2014, GAL Francis filed a report, during the preparation of which she interviewed twenty-four persons and reviewed the court file on Izzo's case. Dr. William Schmalz, who was seeing Izzo every four weeks to monitor her medications, wrote a letter indicating his belief that Izzo was in need of a guardian. Ruh told GAL Francis that she was concerned that Izzo's daughter Elizabeth Izzo was causing Izzo unnecessary stress by micro-managing her care. Wendy Scott of APS told GAL Francis that she believed a guardian would insulate Izzo from the "family drama[,]" including her son Bill Izzo borrowing money from Izzo. Appellant's App. p. 31.

Elizabeth and her daughter Michelle White both told GAL Francis that they believed Izzo needed a guardian. Elizabeth and White expressed concerns about Izzo's diet, a neighbor that may have stolen pain medication from Izzo, Izzo's ability to properly care for her cat, and their belief that Izzo's neighbors were intoxicated and could not "look in on Mrs. Izzo." Appellant's App. p. 31. Elizabeth and White believed that Izzo could no longer balance her checkbook or handle her financial affairs.

GAL Francis registered concern that three medical professionals had opined that Izzo was in need of a guardian and with the number of allegations that family members were too involved in Izzo's affairs. GAL Francis recommended that a guardian be appointed to assist in Izzo's financial and personal affairs, noting that "[a] guardianship would allow the children to be just that, children to Mrs. Izzo." Appellant's App. p. 36.

On June 10, 2014, the trial court held a second hearing. Ruh opined that Izzo was in need of a guardian because she was, at times, unable to recall exactly what her doctors had told her and there had been "significant confusion" regarding medical issues. Tr. p. 52. Ruh also affirmed that Izzo "could use some assistance with her finances and … some insulation from some aggressive family members[.]" Tr. p. 53. GAL Francis testified that she stood by the recommendation she made in her April 21, 2014, report that a guardian be appointed for Izzo.

[8] Following the hearing and also on June 11, 2014, the trial court issued an order appointing a guardian for Izzo, an order providing in part as follows:

> The Petitioner, Wendy Scott for Unit 10 [APS], appears in person and with deputy prosecuting attorney Robert Miller for a hearing on the Petition for Guardianship of Sharon Izzo. Temporary Guardian Elizabeth Ruh is present in person. Sharon Izzo is present with her attorney, Frederick Turner. [GAL] Terri Francis is present. Witnesses are sworn and evidence is taken. The court FINDS as follows:
>
> 1. Sharon Izzo suffers from cognitive problems and mental illness such that she is not able to care for herself without assistance. Ms. Izzo has been diagnosed with schizoaffective disorder and frontal lobe dysfunction. She also suffers from mild dementia.
> 2. As noted by Dr. Jameson Way, Sharon Izzo is not capable of making personal and financial decisions due to her inability to comprehend the long-term implications of her actions. Dr. William Schmalz and Dr. Vanessa Baird have reached similar conclusions.
> 3. [GAL] Terri Francis has thoroughly investigated this matter. Ms. Francis has interviewed 24 witnesses and reviewed the available medical records. Ms. Francis recommends that a professional guardian such as Elizabeth Ruh be appointed for Ms. Izzo.
> 4. Sharon Izzo is hereby adjudicated an incapacitated adult.
> 5. Elizabeth Ruh should be appointed guardian for Sharon Izzo.
>
> IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:
> 1) Elizabeth Ruh, d/b/a Personal Financial Services, LLC, is appointed as the Guardian of the person and estate of Sharon Izzo.

Appellant's App. p. 45.

# Discussion and Decision

[9] Izzo contends that APS produced insufficient evidence to sustain its finding that she needed assistance with her finances and with keeping certain family members at bay. APS contends that the trial court did not abuse its discretion in appointing a guardian for Izzo's person and estate.

[10] Indiana Code section 29-3-2-4(a) provides that "[a]ll findings, orders, or other proceedings under this article shall be in the discretion of the court unless otherwise provided in this article." "Thus, we apply the abuse of discretion standard to review the trial court's findings and order." *In re Guardianship of Atkins*, 868 N.E.2d 878, 883 (Ind. Ct. App. 2007) (citing *In re Guardianship of V.S.D.*, 660 N.E.2d 1064, 1066 (Ind. Ct. App. 1996)), *trans. denied*. "An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances presented." *Id.* (citing *J.M. v. N.M.*, 844 N.E.2d 590, 602 (Ind. Ct. App. 2006), *trans. denied*.). "When reviewing the trial court's findings and judgment, we consider only the evidence most favorable to the prevailing party, and we neither reweigh the evidence nor reassess witness credibility." *Appeal of Wickersham*, 594 N.E.2d 498, 501 (Ind. Ct. App. 1992).

[11] Indiana Code section 29-3-5-3(a) provides, in part, that

> if it is alleged and the court finds that:
> (1) the individual for whom the guardian is sought is an incapacitated person or a minor; and

> (2) the appointment of a guardian is necessary as a means of providing care and supervision of the physical person or property of the incapacitated person or minor;
>
> the court shall appoint a guardian under this chapter.

Indiana Code section 29-3-1-7.5 defines an "incapacitated person as follows:

> "Incapacitated person" means an individual who:
> (1) cannot be located upon reasonable inquiry;
> (2) is unable:
>> (A) to manage in whole or in part the individual's property;
>> (B) to provide self-care; or
>> (C) both;
> because of insanity, mental illness, mental deficiency, physical illness, infirmity, habitual drunkenness, excessive use of drugs, incarceration, confinement, detention, duress, fraud, undue influence of others on the individual, or other incapacity[.]

## 1. Incapacity due to Mental Illness and Mental Deficiency

[12] We conclude that APS produced sufficient evidence to sustain the trial court's finding that Izzo suffered from mental illness such that she was unable to manage her affairs properly. Neurologists Drs. Bales and Way both submitted reports finding Izzo to be incompetent. Dr. Way diagnosed Izzo with schizoaffective disorder and frontal lobe dysfunction, opining that Izzo was "totally incapable of personal & financial decisions[.]" Appellant's App. p. 10. Dr. Bales's report indicated that "[d]ue to cognitive problems and mental illness [Izzo] is not able to care for herself without assistance." Appellant's App. p. 14A. Dr. Bales opined that Izzo could live on her own with daily assistance

and needed help with decision making, grocery shopping, managing her finances, and safety issues. Taken together, these reports amply support a finding that Izzo suffered from an incapacitating mental illness or mental deficiency. Izzo points to evidence in the record that would support a conclusion that she was not mentally incapacitated to the point that a guardianship would be necessary. This argument, however, is merely an invitation to reweigh the evidence, which we will not do.

## 2. Whether Appointment of a Guardian was Necessary

We conclude that there is also sufficient evidence to support the trial court's conclusion that Izzo's incapacity warranted the appointment of a guardian. "Laura" of Comfort Keepers told GAL Francis that Izzo was in need of a guardian, and Elizabeth and White both told GAL Francis the same thing, both believing that Izzo could no longer balance her check book or handle her financial affairs. Educator Dana Thompson told GAL Francis that Izzo "is impressionable and tends to agree with whomever she is speaking to at the time[,]" is a poor decision maker, and needed a professional guardian. Appellant's App. p. 35. Ruh testified that Izzo needed assistance with her finances and insulation from aggressive family members. GAL Francis also concluded that a guardian should be appointed for Izzo to "alleviate the stress and dysfunction that stands between Mrs. Izzo and her children." Appellant's App. p. 36. Izzo's argument on this point again amounts to nothing more than an invitation to reweigh the evidence, which we will not do. APS produced

sufficient evidence to sustain a finding that appointment of a guardian for Izzo was necessary.

[14]    We affirm the judgment of the trial court.

Riley, J., and Robb, J., concur.